**Outten & Golden LLP**
Justin M. Swartz
Ossai Miazad
Juno Turner
Michael J. Scimone
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA VICTORIA PEREZ and KAELA R.M. BROWN, individually and on behalf of all others similarly situated, <br><br>         Plaintiffs, <br><br>   v. <br><br> ALLSTATE INSURANCE COMPANY, <br><br>         Defendant. | **11-CV-1812 (JFB) (AKT)** <br><br><br> **ORAL ARGUMENT REQUESTED** |

### PLANTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
### <u>CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

PROCEDURAL HISTORY ........................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 2

I.    All Adjusters Have the Same Primary Duties ..................................................... 3

       A.    Adjusters' Duties Do Not Vary From One Office to Another ............................. 3

       B.    Adjusters' Discretion is Uniformly Limited ......................................... 5

       C.    Adjusters Throughout New York Use the Same Software to Perform Their
Tasks ........................................................................................ 6

II.    New York Insurance Regulation 68 Governs All Adjusters' Actions ............................... 6

       A.    Regulation 68 Sets Strict Time Frames for Adjusters' Actions ........................... 7

       B.    Regulation 68 Establishes Circumstances and Procedures Under Which
Insurers Can Deny Claims for Benefits ............................................... 7

       C.    New York's Insurance Law Establishes the Amounts that Adjusters Pay
on Medical Bills ......................................................................... 8

III.    Adjusters Receive Uniform Training ............................................................. 8

IV.    All Adjusters Are Evaluated Against the Same Performance Goals ............................... 9

V.    Allstate Uniformly Classifies Adjusters As Exempt ............................................. 11

ARGUMENT .................................................................................................. 11

I.    The NYLL Protects Plaintiffs and the Proposed Class ........................................... 11

II.    Adjusters' Overtime Claims are Well-Suited for Adjudication on a Class Basis ................... 12

       A.    Courts in this Circuit Routinely Certify NYLL Misclassification Cases ................... 12

       B.    A Factfinder Can Make the Same Type of Blanket Exemption Determination
that Allstate Made ...................................................................... 14

III.    Plaintiffs Meet All of the Rule 23 Requirements ............................................... 14

    A.     Plaintiffs Meet Each Rule 23(a) Requirement ...................................................... 15

          1.     Numerosity...................................................................................... 15

          2.     Questions of Law and Fact Are Common to the Class........................... 16

          3.     Plaintiffs' Claims Are Typical of the Class Claims................................. 17

          4.     Plaintiffs Will Adequately Represent the Class....................................... 18

    B.     Plaintiffs Meet the Rule 23(b)(3) Requirements................................................... 19

          1.     Common Questions Predominate ............................................................ 19

          2.     A Class Action is the Superior Mechanism ............................................. 23

IV.    The Court Should Appoint Plaintiffs' Lawyers as Class Counsel ................................... 24

CONCLUSION..................................................................................................................... 25

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*Alba v. Papa John's USA, Inc.*,
No. 05 Civ. 7487, 2007 WL 953849 (C.D. Cal. Feb. 7, 2007)..............................21

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*,
133 S. Ct. 1184 (2013)........................................................................................22

*Aponte v. Comprehensive Health Mgmt., Inc.*,
No. 10 Civ. 4825, 2011 WL 2207586 (S.D.N.Y. June 2, 2011)...........................14, 16, 18, 24

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000)..................................................................................19

*Bolanos v. Norwegian Cruise Lines Ltd.*,
212 F.R.D. 144 (S.D.N.Y. 2002) ........................................................................22

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)............................................................................................12

*Chun-Hoon v. McKee Foods Corp.*,
No. 05 Civ. 620, 2006 WL 3093764 (N.D. Cal. Oct. 31, 2006)...........................21

*Clark v. Ecolab Inc.*,
Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
2010 WL 1948198 (S.D.N.Y. May 11, 2010) ......................................................19

*Clark v. Honey-Jam Cafe, LLC*,
No. 11 Civ. 3842, 2013 WL 1789519 (N.D. Ill. Mar. 21, 2013).....................22, 23

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013)....................................................................................22, 23

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)..................................................................................16

*Cuevas v. Citizens Fin. Grp., Inc.*,
No. 12 Civ. 2832, 2013 WL 2321426 (2d Cir. May 29, 2013).........................13, 20

*Damassia v. Duane Reade Inc.*,
250 F.R.D. 152 (S.D.N.Y. 2008) .................................................................. *passim*

*deMunecas v. Bold Food LLC*,
No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ...........................19

*Dorn v. Eddington Sec., Inc.*,
No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011).............................................25

*Dziennik v. Sealift, Inc.*,
No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007).............................................19

*Glatt v. Fox Searchlight Pictures Inc.*,
No. 11 Civ. 6784, 2013 WL 2495140 (S.D.N.Y. June 11, 2013)..............................14, 19, 23

*Goldman v. Radioshack Corp.*,
No. 03 Civ. 0032, 2005 WL 1124172 (E.D. Pa. May 9, 2005) ...............................................22

*Han v. Sterling Nat'l Mortg. Co.*,
No. 09 Civ. 5589, 2011 WL 4344235 (E.D.N.Y. Sept. 14, 2011)................................. *passim*

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
239 F.R.D. 363 (S.D.N.Y. 2007) ............................................................................................21

*In re Initial Pub. Offering Sec. Lit.*,
471 F.3d 24 (2d Cir. 2006).......................................................................................................15

*Jacob v. Duane Reade, Inc.*,
No. 11 Civ. 0160, 2013 WL 1137024 (S.D.N.Y. Mar. 20, 2013) ........................14, 17, 18, 19

*Jankowski v. Castaldi*,
No. 01 Civ. 0164, 2006 WL 118973 (E.D.N.Y. Jan. 13, 2006)...............................................21

*Johnson v. Brennan*,
No. 10 Civ. 4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011)..............................................19

*Khait v. Whirlpool Corp.*,
No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010).............................................19

*Krzesniak v. Cendant Corp.*,
No. 05 Civ. 05156, 2007 WL 1795703 (N.D. Cal. June 20, 2007) .........................................21

*Leyva v. Medline Indus. Inc.*,
11-56849, 2013 WL 2306567 (9th Cir. May 28, 2013)............................................................23

*Marisol A. by Forbes v. Guiliani*,
126 F.3d 372 (2d Cir. 1997).........................................................................................15, 16, 18

*McMahon v. Olivier Cheng Catering and Events, LLC*,
No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) .............................................19

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002).................................................................................................20

*Myers v. Hertz Inc.*,
  624 F.3d 537 (2d Cir. 2010).........................................................................................*passim*

*In re Novartis Wage & Hour Litig.*,
  611 F.3d 141 (2d Cir. 2010).........................................................................................12

*Reyes v. Altamarea Grp., LLC*,
  No. 10 Civ. 6451, 2011 WL 4599773 (S.D.N.Y. June 3, 2011)....................................19

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993).........................................................................................18

*Shabazz v. Morgan Funding Corp.*,
  269 F.R.D. 245 (S.D.N.Y. 2010)..................................................................................14

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
  659 F.3d 234 (2d Cir. 2011).........................................................................................18

*Tierno v. Rite Aid Corp.*,
  No. 05 Civ. 02520, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006)...............................21

*Torres v. Gristede's Operating Corp.*,
  Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627,
  2010 WL 2572937 (S.D.N.Y. June 1, 2010) ..............................................................*passim*

*In re Vivendi Universal, S.A.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) ...................................................................................24

*Wal–Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011).................................................................................................16

*Wang v. Chinese Daily News, Inc.*,
  231 F.R.D. 602 (C.D. Cal. 2005).................................................................................22

*Westerfield v. Wash. Mut. Bank*,
  Nos. 06 Civ. 2817, 08 Civ. 287, 2009 WL 6490084 (E.D.N.Y. June 26, 2009) ..............19, 25

*Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*,
  No. 05 Civ. 2320, 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006)................................21

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) .................................................................................24

*Youngblood v. Family Dollar Stores, Inc.*,
  No. 09 Civ. 3176, 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) ...................................*passim*

**Statutes**

N.Y. Ins. L § 5103(a)......................................................................................................2

vi

N.Y. Ins. L. § 5108(a) .................................................................................................. 2, 8

N.Y. Lab. Law § 650 ....................................................................................................... 12

**Other Authorities**

29 C.F.R. § 541.200(a) ................................................................................................... 12

11 N.Y.C.R.R. § 68 ............................................................................................................ 8

Fed. R. Civ. P. 23 ................................................................................................... *passim*

N.Y. Comp. Codes R. & Regs. tit. 11, § 65-1.1 ............................................................... 7

N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.1 ........................................................... 6, 7

N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.4 ............................................................... 7

N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.8 ............................................................... 7

N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.9 ............................................................... 7

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ............................................................ 12

## PRELIMINARY STATEMENT

This is a perfect case for class certification.  Plaintiffs and the class members they seek to represent are insurance adjusters who all perform the exact same primary duty – processing no-fault insurance claims – according to the exact same company-wide procedures and under the exact same New York state regulatory regime.  Plaintiffs challenge a single policy decision – Allstate's uniform classification of Plaintiffs and class members as exempt from the overtime protections of the New York Labor Law ("NYLL") under the administrative exemption.

At trial, through common, generally applicable evidence, Allstate will attempt to meet its burden to prove that no-fault insurance adjusters' "primary duty" (the duty that is most important to the company) is exempt administrative work.  Plaintiffs and the class members will attempt to demonstrate the opposite – that Allstate's single, uniform decision to (mis)classify no-fault insurance adjusters was unlawful.  A class trial is the most efficient and sensible way to resolve this dispute, more so than dozens or hundreds of individual trials.

## PROCEDURAL HISTORY

Maria Victoria Perez and Kaela R.M. Brown ("Plaintiffs") filed this class and collective action on April 13, 2011, under the Fair Labor Standards Act ("FLSA") and NYLL on behalf of themselves and other no-fault insurance Adjusters nationwide against Allstate Insurance Company ("Allstate").  ECF No. 1, alleging that Allstate violated the FLSA and NYLL by misclassifying them and other Adjusters assigned to no-fault, Personal Injury Protection, and Med-Pay matters as exempt from the overtime pay requirements of these laws.  Ex. A, (First Am. Complaint) ¶ 2. [1]  Plaintiffs filed a First Amended Complaint ("Complaint") on November 22, 2011.  ECF No. 21.

---

[1]     All Exhibits are attached to the Declaration of Juno Turner in Supp. of Mot. For Class

On April 3, 2012, Plaintiffs moved to conditionally certify an FLSA collective action pursuant to 29 U.S.C. § 216(b).  ECF No. 32.  Allstate did not oppose the motion, ECF No. 41, which the Court granted on June 26, 2012.  Minute Entry dated June 26, 2012.  Notice issued on August 31, 2012, and approximately 90 individuals joined the case.  Turner Decl. ¶ 5.

## STATEMENT OF FACTS

Allstate is the second largest issuer of private passenger auto insurance in the United States.  Ex. B (Excerpt from Allstate Corp.'s SEC Form 10-K, filed Feb. 2, 2012) at 2.  Allstate issues No-Fault insurance policies regulated by New York's Insurance Law, which requires all motor vehicle insurance policies to include no-fault coverage.  N.Y. Ins. L § 5103(a).  No-fault, or Personal Injury Protection ("PIP"), coverage is non-discretionary coverage "designed to pay promptly, regardless of who is at fault or whether there was any negligence, for economic losses (meaning medical/health expenses, lost earnings, and certain other reasonable and necessary expenses related to injuries sustained), up to $50,000 per person . . . to the driver and all passengers injured in [a] car as well as any pedestrians injured by [a] car, because of its use or operation in New York State."[2] In New York, no-fault insurers pay for medical treatments at predetermined rates established by the New York Workers' Compensation Fee Schedule.  N.Y. Ins. L. § 5108(a).

---

Certification Pursuant to Fed. R. Civ. P. 23 ("Turner Decl.").

[2]    New York State Department of Financial Services, 2012 Consumer Guide to Automobile Insurance, available at http://www.dfs.ny.gov/insurance/auto/2012/auto1202.htm (last visited June 8, 2013); *see also* New York State Department of Financial Services website, at http://www.dfs.ny.gov/insurance/r68/r83_intro.htm (New York's no-fault law "was enacted to provide prompt payment of health related expenses and wage loss of those parties injured as a result of an auto accident"); Ex. C (Excerpts from Deposition Transcript of Christine A. Sullivan, dated August 2, 2012 ("Sullivan Tr.")) 73:4-10.

2

Plaintiffs and other No-Fault/PIP "Pending"[3] Adjusters ("Adjusters") process claims made under Allstate's no-fault insurance policies.  Allstate employs Adjusters in its Islandia, Brooklyn, and Buffalo Market Claim Offices ("MCOs").  Ex. D (Excerpts from Deposition Transcript of Laurette Turturro, dated May 17, 2012 ("Turturro Tr.") 24:8-15.  These offices receive more than 54,000 medical bills per month.  Ex. E (New York 1st Party Casualty Overview) at 2.

## I.     All Adjusters Have the Same Primary Duties.

Adjusters' primary duty is uniform in all three MCOs.  Adjusters' most important role, which is established by Allstate's corporate headquarters, is to process claims following uniform steps.  All Adjusters use the same software to help them to perform their tasks regardless of where they work.

### A.     Adjusters' Duties Do Not Vary From One Office to Another.

Adjusters in all three New York offices have two "major responsibilities" established by Allstate's headquarters (commonly referred to as "Home Office"): customer satisfaction and process management.  Ex. F (K. Brown Performance Evaluation); Ex. D (Turturro Tr.) 111:10-13.  Both are part of Adjusters' primary duty – processing claims.

Adjusters' customer service duties involve contacting eligible insured parties ("EIPs"), informing them of the benefits for which they are eligible, and responding to queries.  Ex. G (Declaration of Susan DeNicola dated June 12, 2013 ("Denicola Decl.")) ¶ 20; Ex. H (Excerpts from Deposition Transcript of Lisa Hlatky, dated April 25, 2013 ("Hlatky Tr.") 48:11-49:17; Ex. I (Excerpts from Deposition Transcript of Marcianne Lobello, dated March 8, 2013 ("LoBello Tr.") 98:12-99:21; Ex. J (Declaration of Kiana Reynolds dated June 12, 2013 ("Reynolds Decl.))

---

[3]    Allstate refers to adjusters who have a pending queue of claims assigned to them as "pending" adjusters.

¶ 18.  All Adjusters follow a uniform, prescribed process for making contact with EIPs dictated by a checklist provided by Allstate.  Ex. H (Hlatky Tr.) 110:5-19; Ex. K (9 Steps Contact File Note); Ex. L (Email dated March 24, 2010).

Adjusters' "process management" duties require them to verify coverage and confirm that the treatment received by the EIP corresponds to the injury sustained.  Ex. C (Sullivan Tr.) 73:11-15; Ex. D (Turturro Tr.) 145:18-146:5.  This does not vary from Adjuster to Adjuster.  As part of process management, all Adjusters verify coverage by reviewing police and medical reports and information provided by the EIP, to determine whether any of the specified regulatory exclusions – for example, for driving while intoxicated – apply.  Ex. G (Denicola Decl.) ¶ 18; Ex. M (Excerpts from Deposition Transcript of Maria Victoria Perez, dated March 26, 2012 ("Perez Tr.")) 83:16-19; Ex. J (Reynolds Decl.) ¶ 16.  Adjusters compare the exclusions listed in the policy to the facts in the case file.  Ex. I (LoBello Tr.) 142:3-21; Ex. M (Perez Tr.) 83:16-19.  The applicable exclusions are the same in every Allstate policy issued by Allstate in New York.  Ex. C (Sullivan Tr.) 26:7-13.  This process does not vary from office to office.

Once coverage is confirmed, the next step for all Adjusters is to process payment consistent with New York's fee schedule.  Ex. N (Excerpts from Deposition Transcript of Kaela R.M. Brown, dated March 28, 2012 ("Brown Tr.")) 89:4-9; Ex. G (Denicola Decl.) ¶ 12; Ex. H (Hlatky Tr.) 52:5-21; 64:9-18; Ex. I (LoBello Tr.) 9:8-13; 144:14-25; Ex. M (Perez Tr.) 226:18-227:7; Ex. J (Reynolds Decl.) ¶ 12.

Adjusters in all three offices follow the same steps for periodically determining whether Allstate should continue to pay for treatment on a claimed injury.  Whether to continue to pay for treatment is entirely determined by the doctor to whom the file is referred, which is a rule consistently followed by all Adjusters.  Ex. C (Sullivan Tr.) 123:17-25; Ex. G (Denicola Decl.) ¶

4

15; Ex. M (Perez Tr.) 95:19-96:12; Ex. J (Reynolds Decl.) ¶ 14; Ex. I (LoBello Tr.) 37:3-19;

149:17-150:10; Ex. H (Hlatky Tr.) 58:3-10; 110:21-111:14; Ex. N (Brown Tr.) 351:21-25; Ex. I

(LoBello Tr.) 65:5-9; 68:14-24; 69:5-13.

     All Adjusters' claim processing work is overseen by a "Claims Process Specialist," who

ensures that all New York Adjusters handle claims according to uniform Allstate guidelines and

procedures.  Ex. C (Sullivan Tr.) 82:10-83:2; Ex. D (Turturro Tr.) 25:4-26:3.  Allstate distributes

the same "Adjuster File Documentation Guides" to each of its New York managers to ensure that

all Adjusters' files are documented the same way and to ensure that supervisors can determine

whether claims are properly handled.  Ex. D (Turturro Tr.) 138:19-141:21; Ex. O (Adjuster File

Documentation guidelines).

     **B.**     **Adjusters' Discretion is Uniformly Limited.**

     In processing no-fault claims, Adjusters do not conduct investigations regarding liability.

Ex. C (Sullivan Tr.) 15:10-14.  Adjusters also do not determine which party is at fault for a

particular accident.  Those determinations are made, if at all, by employees called "liability

adjusters," who are not part of the proposed class.  Ex. C (Sullivan Tr.) 17:11-16; Ex. N (Brown

Tr.) 71:5.  Adjusters also do not negotiate or settle claims.  Ex. N (Brown Tr.) 73:18-21; Ex. G

(Denicola Decl.) ¶ 20; Ex. I (LoBello Tr.) 122:10-21; 145:2-6; 156:19-21; Ex. M (Perez Tr.)

85:5; Ex. J (Reynolds Decl.) ¶ 19.  This does not vary from Adjuster to Adjuster.

     All Adjusters must consult with their manager before denying coverage on an insured

party's claim.  Ex. D (Turturro Tr.) 124:7-16; Ex. N (Brown Tr.) 110:18-23; Ex. H (Hlatky Tr.)

69:17-70:11; Ex. I (LoBello Tr.) 123:4-17; Ex. M (Perez Tr.) 87:16-88:3.  Allstate provides

Adjusters with templates containing the wording for denials to ensure consistency.  Ex. D

(Turturro Tr.) 160:20-162:5; Ex. P (Email dated Jan. 13, 2011).

**C.      Adjusters Throughout New York Use the Same Software to Perform Their Tasks.**

All Adjusters review medical bills using software called Mitchell Decision Point ("MDP").  All pending bills are scanned into MDP, which is pre-programmed with New York's fee schedule.  Ex. C (Sullivan Tr.) 34:10-35:4; Ex. G (Denicola Decl.) ¶ 12; Ex. H (Hlatky Tr.) 60:8-15; Ex. I (LoBello Tr.) 148:3-12; Ex. M (Perez Tr.) 86:3-12; Ex. J (Reynolds Decl.) ¶ 12. MDP then alerts the Adjuster when a billed amount is not consistent with the fee schedule, or with the diagnosis on file for a particular claim.  Ex. C (Sullivan Tr.) 35:1-11; 36:7-13; Ex. G (Denicola Decl.) ¶ 12; Ex. M (Perez Tr.) 100:3-8; Ex. J (Reynolds Decl.) ¶ 12.  Adjusters pay the amounts dictated by the fee schedule.  Ex. N (Brown Tr.) 89:4-9; Ex. H (Hlatky Tr.) 52:5-21; 64:9-18; Ex. I (LoBello Tr.) 9:8-13; 144:14-25; Ex. M (Perez Tr.) 226:18-227:7.

Allstate requires all Adjusters to use a proprietary software system, NextGen, to prompt Adjusters to complete tasks on their files.  Ex. N (Brown Tr.) 77:3-5; Ex. G (Denicola Decl.) ¶ 11; Ex. H (Hlatky Tr.) 68:23-69:16; Ex. I (LoBello Tr.) 94:18-95:12; Ex. M (Perez Tr.) 229:25-230:12; Ex. G (Denicola Decl.) ¶ 11.  NextGen requires Adjusters to make contact with EIPs within 24 hours of file assignment.  Ex. I (LoBello Tr.) 96:13-97:25.  NextGen reminds Adjusters to review specified files every 30 days.  Ex. I (LoBello Tr.) 94:24-95:4; Ex. M (Perez Tr.) 229:25-230:12.  NextGen also indicates which tasks to prioritize.  Ex. I (LoBello Tr.) 106:4-15; Ex. M (Perez Tr.) 131:9-15.

**II.      New York Insurance Regulation 68 Governs All Adjusters' Actions.**

All New York Adjusters' duties are governed by Insurance Regulation 68 ("Regulation 68"), which implements New York's No-Fault law.  N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.1 *et seq*, *see also* http://www.dfs.ny.gov/insurance/r68/r68_intro.htm; Ex. N (Brown Tr.) 98:21-; Ex. M (Perez Tr.) 217:24-218:3.  The current version of Regulation 68 has been in effect

6

since April 5, 2002.  N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.1.  Compared to other states, the "amount of regulatory oversight . . . is significantly higher" in New York.  Ex. C (Sullivan Tr.) 148:4-7.

     **A.**     **Regulation 68 Sets Strict Time Frames for Adjusters' Actions.**

     Regulation 68 establishes the manner and timing of how Adjusters must acknowledge receipt of claims.  N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.4(b); Ex. C (Sullivan Tr.) 74:22-75:7.  Claims must be approved or denied within 30 days.  N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.8(c); Ex. D (Tuturro Tr.) 21:15-22:7; Ex. N (Brown Tr.) 108:23-109:3; Ex. I (LoBello Tr.) 151:2-11.  Insurers must pay interest on overdue payments, creating a powerful incentive to process claims quickly and efficiently.  N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.9(1); Ex. D (Turturro Tr.) 22:17-21; Ex. Q (Excerpts from Deposition Transcript of Connie Musachio, dated October 12, 2012  ("Musachio Tr.")) 37:2-6; Ex. H (Hlatky Tr.) 88:14-89:5.

     **B.**     **Regulation 68 Establishes Circumstances and Procedures Under Which Insurers Can Deny Claims for Benefits.**

     Regulation 68 contains "specific rules . . . with respect to denial and payment of benefits . . . ."  Ex. C (Sullivan Tr.) 113:3-5.  No-fault regulations mandate certain exclusions from coverage, including, *inter alia*, for injuries sustained while operating a motorcycle, committing a felony, or driving while intoxicated.  N.Y. Comp. Codes R. & Regs. tit. 11, § 65-1.1.

     The regulation "is really specific in terms of steps insurers need to do in order to deny medical bills."  Ex. C (Sullivan Tr.) 113:12-15.  It sets forth the methods an insurer may use to verify a claim, N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.8, the associated deadlines for each denial, N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.8(c), and the types of documentation that an adjuster must have in order to deny a particular bill; Ex. C (Sullivan Tr.) 121:5-9, for example  ".

. . the fact that you need independent medical exams to make certain decisions pursuant to the regulations." Ex. C (Sullivan Tr.) 113:5-7.

   If the insurer denies a claim, the denial is communicated to the injured person through a statutorily-prescribed, preprinted form called an NF10.  Ex. C (Sullivan Tr.) 114:25-115:2. Adjusters are required to document their compliance with this and other regulatory notice requirements by keeping meticulous notes.  Ex. C (Sullivan Tr.) 149:13-17 (". . . in New York, for example, you have a variety of no-fault forms.  So you need documentation in the file, and you have to have evidence of sending the forms out . . . .").  Allstate evaluates all Adjusters on their compliance with documentation requirements.  *See, e.g.*, Ex. N (Brown Tr.) 135:13-15.

### C.   New York's Insurance Law Establishes the Amounts that Adjusters Pay on Medical Bills.

Article 51 of New York's Insurance Law limits the recovery of health care providers to the charges permissible under New York's Workers' Compensation Fee Schedule.  N.Y. Ins. L. § 5108(a).  The law permits the state's insurance superintendent to promulgate rules and regulations to implement the fee schedules, which the superintendent has done at 11 N.Y.C.R.R. § 68 *et seq*.  All Adjusters in New York State follow these fee schedules in issuing payment for services rendered to eligible insured persons who submit claims pursuant to Allstate's no-fault insurance policies.  Ex. C (Sullivan Tr.) 131:12-17; 132:6-13; Ex. N (Brown Tr.) 89:4-6; Ex. H (Hlatky Tr.) 52:5-21; 54:13-21; Ex. I (LoBello Tr.) 151:12-17; Ex. M (Perez Tr.) 85:6-7.

## III.   Adjusters Receive Uniform Training.

Allstate provides all New York Adjusters the same type of training.  Upon hire, all Adjusters attend "Tech-Cor," a basic claims training at Allstate's home office in Chicago.  Ex. C (Sullivan Tr.) 52:12-53:14; Ex N (Brown Tr.) 84:4-10; Ex. I (LoBello Tr.) 59:14-60:17; Ex. M (Perez Tr.) 55:19-22.  In addition, Allstate trains Adjusters on how to read medical reports,

including date of injury, date of service, prognosis, and type of treatment prescribed.  Ex. C

(Sullivan Tr.) 48:9-23; Ex. I (LoBello Tr.) 79:16-80:8.  Newly hired Adjusters in New York

receive state-specific training covering the applicable New York regulations, the New York Fee

Schedule, no-fault and "Med-Pay" coverage, and the software applications that they use in their

jobs.  Ex. R (Email dated April 22, 2010); Ex. C (Sullivan Tr.) 154:14-155:18.  Allstate also

provides Adjusters with state-specific job aids, covering topics relating to New York State.  Ex.

C (Sullivan Tr.) 70:7-10; Ex. I (LoBello Tr.) 85:3-14.

**IV.    All Adjusters Are Evaluated Against the Same Performance Goals.**

Allstate's Home Office has established a three-step process for Adjusters' annual

performance reviews.  Ex. D (Turturro Tr.) 28:21-24.  Adjusters are first notified of their goals in

the areas of customer service and file handling.  Ex. D (Turturro Tr.) 27:14-28:4; Ex. N (Brown

Tr.) 317:7-13; Ex. M (Perez Tr.) 145:12-16.  Home Office dictates many of the goals Adjusters

receive.  Home Office establishes the "critical success factors" and the "major responsibilities"

according to which Adjusters' work is evaluated.  Ex. D (Turturro Tr.) 109:25-111:13; Ex. S

(Excerpts from Deposition Transcript of Judy Gaston, dated August 3, 2012 ("Gaston Tr.") 44:4-

13.  For example, Home Office requires that Adjusters "take ownership, identify [customer]

needs, [and] ensure satisfaction."  Ex. F (K. Brown Performance Review) at Allstate000038; Ex.

D (Turturro Tr.) 64:13-65:4.  Allstate also requires all Adjusters to contact the claimant within

four days of the claim coming in.  Ex. D (Turturro Tr.) 30:14-31:12.  Home Office also requires

that Adjusters have no more than fourteen percent of their assigned bills pending for more than a

specified period of days.  Ex. D (Turturro Tr.) 31:17-32:21; Ex. H (Hlatky Tr.) 113:10-17.

Home Office establishes the time frames by which Adjusters must respond to "tasks" generated

by Allstate's proprietary software, NextGen.  Ex. D (Turturro Tr.) 32:22-34:14.  Allstate requires

9

that Adjusters minimize the number of calls they receive that go unanswered, and sets a goal that such calls won't exceed 1.5 percent of their total call volume.  Ex. D (Turturro Tr.) 68:21-69:15. Adjusters then receive a mid-year review from their direct supervisor assessing their progress on their goals, and, at the end of the year, receive a written document containing their year-end results.  Ex. D (Turturro Tr.) 28:5-20; Ex. N (Brown Tr.) 179:7-22; Ex. G (Denicola Decl.) ¶ 22; Ex. J (Reynolds Decl.) ¶ 20.  This same process applies to all of the Adjusters employed by Allstate in New York State.  Ex. D (Turturro Tr.) 29:22-30:4.

Adjusters throughout New York are subject to quarterly file reviews, in which managers review the way Adjusters processed a file and determine whether each Adjuster "did what he or she is supposed to do."  Ex. C (Sullivan Tr.) 76:18-77:8; Ex. D (Turturro Tr.) 43:1-11.  All Adjusters are reviewed according to the same criteria, which are established by Home Office. Ex. D (Turturro Tr.) 40:24-41:13.  These criteria include whether the Adjuster investigated coverage, whether they made contact with the EIP within Allstate's required timeframe, whether they adequately documented their claim handling, and whether they obtained sufficient records to verify the treatment for which payment is sought.  Ex. T (NY First Party Casualty Review Question and Definition).

Home Office also establishes statewide criteria for "service observes," in which Adjusters' supervisors listen in on Adjusters' telephone conversations with injured parties and evaluate their customer service skills.  Ex. D (Turturro Tr.) 57:12-20; 59:5-10; 60:18; Ex. U (Observable Behavior Review).  Criteria established by Home Office include whether Adjusters use a welcoming voice and friendly greeting, whether they spoke in a non-interrogating tone, informed the customer of next steps in the claims process, and asked whether the customer had additional questions.  Ex. U (Turturro Ex. 3 – Observable Behavior Review).

10

Adjusters are also evaluated on their compliance with New York regulations.  Ex. D (Turturro Tr.) 43:16-24.  An Allstate Performance Consultant reviews Adjusters' files and the bills they pay on a monthly basis to determine whether the bills were paid correctly.  Ex. D (Turturro Tr.) 43:25-45:14.  Adjusters throughout New York are required to meet regulatory requirements 93 percent of the time.  Ex. D (Turturro Tr.) 49:2-5; 71:11-72:2; Ex. F (K. Brown Performance Review).  In addition, consistent with Regulation 68's strict time requirements for payment of bills, Adjusters are rated on how many of their bills are processed within defined timeframes.   Ex. Q (Musachio Tr.) 40:20-21; Ex. H (Hlatky Tr.) 88:16-89:5.

**V.      Allstate Uniformly Classifies Adjusters As Exempt.**

Allstate has classified all Adjusters as exempt administrative employees since at least 1996.  Ex. S (Gaston Tr.) 12:5-23.  In approximately 2004, Allstate reviewed its classification of various categories of adjusters, including Adjusters assigned to no-fault claims.  Ex. S (Gaston Tr.) 26:14-27:19; 28:16-29:14.  In reviewing its classification, Allstate did not individually assess Adjusters' job duties or make a person-by-person exemption decision; rather, Allstate reviewed the duties of no-fault adjusters generally and determined that they qualified for the administrative exemption.  Ex. S (Gaston Tr.) 39:16-41:25.  Allstate spoke to high-level employees who oversee claims on a regional basis, as well as to vice presidents based in Home Office.  Ex. S (Gaston Tr.) 33:4-34:8.  Allstate did not speak to Adjusters or their direct supervisors in reviewing their exempt classification.  Ex. S (Gaston Tr.) 36:5-15.

**ARGUMENT**

**I.      The NYLL Protects Plaintiffs and the Proposed Class.**

The NYLL requires employers to pay employees a premium rate of one and one-half times their regular rate of pay for hours worked in excess of 40 in a workweek, unless the

employees are exempt.  N.Y. Lab. Law §§ 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, §

142-2.2.  Exemptions are narrowly construed in favor of employees.  *In re Novartis Wage &*

*Hour Litig.*, 611 F.3d 141, 150 (2d Cir. 2010), *abrogated on other grounds by Christopher v.*

*SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012).  Allstate bears the burden of proving that

Adjusters are exempt, *Novartis*, 611 F.3d at 150, and must prove each element of its exemption

defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The NYLL's overtime

requirements and its exemptions are interpreted using the same standards as the FLSA.  N.Y.

Comp. Codes R. & Regs. tit. 12, § 142-2.2 (FLSA exemptions are adopted into state law);

*Novartis*, 611 F.3d at 157.

**II.   Adjusters' Overtime Claims are Well-Suited for Adjudication on a Class Basis.**

    **A.   Courts in this Circuit Routinely Certify NYLL Misclassification Cases.**

All Adjusters share key characteristics that are relevant to Allstate's exemption defenses.[4]

In *Myers v. Hertz Inc.*, 624 F.3d 537, 549 (2d Cir. 2010), the Second Circuit held that class

treatment of NYLL misclassification claims can be appropriate and efficient and specifically

endorsed class certification where there is evidence of a uniform exemption decision and

evidence that "tend[s] to show that the plaintiffs' jobs were similar in ways material to the

establishment of the exemption criteria."  Recently, the Second Circuit reaffirmed its holding in

*Meyers* that wage and hour misclassification cases can be certified as Rule 23 class actions,

particularly where – as here – "company-wide documents and policies tended to 'show that

---

[4]    Allstate claims that all Adjusters are "exempt from the overtime pay provisions of the
FLSA and the New York Labor Law and their respective implementing regulations."  Ex. V
(Ans.) Third Affirmative Defense at 10.  To qualify for the administrative exemption – the only
exemption for which Adjusters could possibly qualify – an employee (1) must earn at least $455
per week; and (2) have her "primary duty" be (i) "performance of office or non-manual work
directly related to the management or general business operations of the employer or the
employer's customers" and (ii) "the exercise of discretion and independent judgment with
respect to matters of significance."  29 C.F.R. § 541.200(a)(1)-(3).

plaintiffs' jobs were similar in ways material to the establishment of exemption criteria.'"
*Cuevas v. Citizens Fin. Grp., Inc.*, No. 12 Civ. 2832, 2013 WL 2321426, at *3 (2d Cir. May 29,
2013) (quoting *Myers*, 624 F.3d at 549) (internal quotation marks omitted).  As an example of a
NYLL misclassification case that was properly certified, both *Myers* and *Cuevas* cite *Damassia
v. Duane Reade Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008), because there, like here, the plaintiffs'
job duties were "largely consistent" and any individual differences in job tasks would not be of
the "magnitude" to "cause individual issues to predominate."  *Myers*, 624 F.3d at 549 (quoting
*Damassia*, 250 F.R.D. at 160).

  The common evidence here, as in *Damassia*, warrants class certification.  All members of
the proposed class were classified as exempt from the NYLL's overtime requirements, had the
same title, and performed the same primary job duty.  *See* Statement of Facts, Parts I, V., *supra*.
Allstate applies uniform policies and procedures to all Adjusters, evaluates all Adjusters
according to the same objective criteria, provides all Adjusters with near-identical training, and
uniformly classifies Adjusters as exempt from the protections of the NYLL.  *Id*. at Parts III-V.

  After *Myers*, district courts continued to certify NYLL misclassification classes.  In
*Youngblood v. Family Dollar Stores, Inc.*, the court certified a NYLL class of store managers
based on the defendant's uniform classification policy and "corporate policies delineating store
managers' . . . uniform day-to-day job responsibilities."  No. 09 Civ. 3176, 2011 WL 4597555, at
*2 (S.D.N.Y. Oct. 4, 2011) (internal quotation marks omitted).  Other district courts in the
Second Circuit have also certified misclassification claims based on such evidence.  *See, e.g.,*
*Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784, 2013 WL 2495140, at *18 (S.D.N.Y.
June 11, 2013) (certifying class of unpaid interns who were hired pursuant to centralized
internship program); *Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160, 2013 WL 1137024, at *6-7

(S.D.N.Y. Mar. 20, 2013) (certifying class where assistant store managers were uniformly classified as exempt and carried out their duties according to uniform policies, training, and job descriptions); *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825, 2011 WL 2207586, at *9-12 (S.D.N.Y. June 2, 2011) (certifying class based on uniform classification policy and uniform job descriptions and testimony of plaintiffs regarding their job duties); *Han v. Sterling Nat'l Mortg. Co.*, No. 09 Civ. 5589, 2011 WL 4344235, at *4, *12 (E.D.N.Y. Sept. 14, 2011) (certifying class based on employer's uniform classification and common job description); *Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 250 (S.D.N.Y. 2010) (certifying class based on the defendants' "centrally administered compensation policy"). Here, it is undisputed that it is Allstate's company-wide policy to deny Adjusters overtime pay. Whether it was unlawful or not is a perfect issue for class treatment.

### B. A Factfinder Can Make the Same Type of Blanket Exemption Determination that Allstate Made.

Allstate uniformly classifies all Adjusters as exempt from the overtime protections of the NYLL without conducting an individualized inquiry of their job duties. *See* Statement of Facts, Part V, *supra*. In reviewing its classification of Adjusters as exempt employees, Allstate did not conduct an individualized inquiry into Adjusters' duties; to the contrary, it spoke only to high-level regional and national employees and specifically avoided speaking to individual Adjusters. It cannot now argue that the Court has to conduct an individualized inquiry to determine whether Allstate got it right. In *Damassia*, the court certified the class in part because the defendant classified the plaintiffs as exempt on a class-wide basis without performing a "systematic re-evaluation of what duties the position entailed." 250 F.R.D. at 157.

### III. Plaintiffs Meet All of the Rule 23 Requirements.

Plaintiffs seek to certify the following class under Rule 23 for violations of Article 19 of

14

the NYLL: All persons employed by Allstate as "pending" No-Fault/PIP/Med-Pay adjusters whom Allstate classified as exempt from the overtime requirements of the NYLL at any time between April 13, 2005 and the date of final judgment in this matter.

Courts give Rule 23 a "liberal rather than restrictive construction," and "adopt a standard of flexibility" when they apply it. *Marisol A. by Forbes v. Guiliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal quotation marks omitted). In order to certify a class, the Court "must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *In re Initial Pub. Offering Sec. Lit.*, 471 F.3d 24, 41 (2d Cir. 2006).

In order to meet their burden, Plaintiffs must show that all of the requirements of Rule 23(a) are met and that one of the requirements of Rule 23(b) is met. Fed. R. Civ. P. 23. To satisfy Rule 23(a), Plaintiffs must show that:

(1)     the class is so numerous that joinder of all members is impracticable;
(2)     there are questions of law or fact common to the class;
(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

Rule 23(b)(3), the provision that Plaintiffs move under here, is satisfied where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. Rule 23(b).

### A.     Plaintiffs Meet Each Rule 23(a) Requirement.

#### 1.     Numerosity.

Rule 23(a)(1) requires Plaintiffs to show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40

15

members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Allstate

has identified 331 Adjusters it employed in New York during less than half of the class period.

Turner Decl. ¶ 8.

**2.     Questions of Law and Fact Are Common to the Class.**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed.

R. Civ. P. 23(a)(2).  A single common question of law or fact will suffice.  *Marisol A.*, 126 F.3d

at 376; *accord Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).  Commonality

"does not mean that all issues must be identical as to each [class] member, but it does require

that plaintiffs identify some unifying thread among the [class] members' claims that warrant[s]

class treatment."  *Damassia*, 250 F.R.D. at 156 (internal quotation marks and citation omitted).

Allstate's blanket classification of all Adjusters as exempt, combined with evidence of its

uniform corporate policies and practices governing the duties, training, and evaluation of

Adjusters, constitute the "unifying thread" uniting the proposed class and satisfying Rule

23(a)(2)'s commonality requirement.  *See Aponte*, 2011 WL 2207586, at *9 (commonality

satisfied where "[a]ll of the proposed class members would rely on the same allegedly wrongful

conduct of the defendant – defendant's policy of misclassifying its Benefits Consultants as

exempt – and raise the same legal arguments in support of their claim – that the outside

salesperson exemption or the administrative employee exemption to the overtime requirements

do not apply").

Plaintiffs raise a number of questions of fact and law that will "generate common

answers" for all class members.  *See Wal-Mart Stores*, 131 S. Ct. at 2551 ("[w]hat matters to

class certification . . . [is] the capacity of a classwide proceeding to generate common *answers*

apt to drive the resolution of the litigation") (internal quotation marks omitted); *Torres*, 2006 WL

16

2819730, at *12-14 (finding commonality based on similar common questions).  The most important one, "what is Adjusters' primary job duty," has a common answer because all Adjusters do the same thing – process claims – and Allstate's exemption defense turns on whether this duty is administrative or not.

Courts routinely find commonality based on this type of common question.  *See Jacob*, 2013 WL 1137024, at *6-7 (commonality satisfied in light of defendant's uniform classification of class members as exempt, uniform descriptions of class members' duties, and similarity among locations where class members worked); *Youngblood*, 2001 WL 4597555, at *2 (common questions including "whether [plaintiffs] are exempt from NYLL overtime requirements because they perform either 'executive' or 'administrative duties'" satisfy Rule 23(a)(2)) (internal quotation marks omitted); *Damassia*, 250 F.R.D. at 157 (common questions include "whether or not [plaintiffs'] duties fall into the 'executive' or 'administrative' exceptions, and whether [defendant] is entitled to an affirmative defense of 'good faith'"); *Han*, 2011 WL 4344235, at *4 ("whether an exemption applies to the NYLL's wage requirements is a legal issue that is common to the entire class"); *see also Myers*, 624 F.3d at 549 ("evidence tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria" may satisfy Rule 23's higher predominance standard).

### 3.    Plaintiffs' Claims Are Typical of the Class Claims.

Rule 23(a)(3) is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A.*, 126 F.3d at 376 (internal quotation marks and citations omitted). "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class.  *Robidoux v.*

17

*Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  The claims of the named plaintiffs and the class

"only need to share the same essential characteristics, and need not be identical." *Damassia*, 250

F.R.D. at 158 (internal quotation marks and citation omitted).  The typicality requirement is not

"highly demanding." *Id.*

Plaintiffs' claims arise from the same course of conduct as the claims of the class –

Allstate's decision to classify all Adjusters as exempt and its failure to pay them overtime

compensation.  *See Damassia*, 250 F.R.D. at 158 ("all class members' claims, including those of

named plaintiffs, are based on the same course of events and legal theory, namely, that

[defendant]'s decision to classify [plaintiffs] as 'exempt' is inconsistent with the requirements of

the NYLL"); *see also Jacob*, 2013 WL 1137024, at *9 (typicality met where class members'

accounts of their duties "are largely consistent with one another" and where particularities of the

named plaintiffs' claims do not threaten to become the focus of the litigation); *Youngblood*, 2011

WL 4597555, at *4 (typicality met because "the essential issue is whether [plaintiffs'] executive

or administrative responsibilities, if any, were extensive enough to be considered their primary

duty and this disputed issue occupies essentially the same degree of centrality for [Plaintiffs] as

for the rest of the class") (internal quotation marks and citation omitted); *Han*, 2011 WL

4344235, at *6; *Aponte*, 2011 WL 2207586, at *10.

### 4.    Plaintiffs Will Adequately Represent the Class.

Rule 23(a)(4) tests whether the class representatives will fairly and adequately protect the

interests of the class.  Fed. R. Civ. P. 23(a)(4).  Where the "class representatives are prepared to

prosecute fully the action and have no known conflicts with any class member," the adequacy

requirement is met.  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 253 (2d Cir.

2011).  "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a

party's claim of representative status.'" *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).  Plaintiffs do not have interests antagonistic to the class.  "The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class." *Damassia,* 250 F.R.D. at 158.  Moreover, these Plaintiffs have demonstrated a commitment to the class by assisting with the preparation of the complaints, sitting for depositions, answering interrogatories, and producing documents.  Turner Decl. ¶ 7.

Plaintiffs also selected counsel who are "qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).  Courts have routinely found that Outten & Golden, LLP ("O&G") "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour law and in class action law." *Westerfield v. Wash. Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ. 287, 2009 WL 6490084, at *3 (E.D.N.Y. June 26, 2009).[5]

**B.    Plaintiffs Meet the Rule 23(b)(3) Requirements.**

**1.    Common Questions Predominate.**

Rule 23(b)(3) requires "questions of law or fact common to class members [to] predominate over any questions affecting only individual [class] members . . . ."  Fed. R. Civ. P.

---

[5]    *See also Glatt*, 2013 WL 2495140, at *17; *Jacob*, 2013 WL 1137024, at *17; *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599773, at *2 (S.D.N.Y. June 3, 2011); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *2 (S.D.N.Y. May 17, 2011); *deMunecas v. Bold Food LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *2-3, *7 (S.D.N.Y. Aug. 23, 2010); *Torres v. Gristede's Operating Corp.,* Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 2572937, at *1 (S.D.N.Y. June 1, 2010); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010); *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *7-8 (E.D.N.Y. Jan. 20, 2010); *Damassia,* 250 F.R.D. at 158.

23(b)(3).  Common questions predominate when "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

In an overtime exemption case, the predominance requirement is met if the plaintiffs present evidence "tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria."  *Myers*, 624 F.3d at 549; *see also Cuevas*, 2013 WL 2321426, at *3.  Here, all members of the class are unified by common facts about their jobs – all have the same duties and title, and Allstate classifies them all as exempt.  *See* Statement of Facts, Parts I, V, *supra*.  This evidence shows that Adjusters' job duties are "largely consistent" with respect to the exemption criteria at issue and is sufficient to satisfy the predominance requirement.  *Damassia*, 250 F.R.D. at 160; *see also Youngblood*, 2011 WL 4597555, at *5 (finding predominance met "[w]here . . . there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies . . . .") (quoting *Damassia*, 250 F.R.D. at 160-61); *Han*, 2011 WL 4344235, at *9 ("[S]o long as plaintiff can demonstrate that the duties . . . were largely similar, the predominance inquiry is satisfied in favor of class certification.").  Moreover, they are also unified by a common legal theory – that Allstate's class-wide exempt classification violates the NYLL.  *See* Statement of Facts, Part V, *supra*.

To the extent that Allstate can point to any individualized issues between class members, they are not of "such a magnitude as to cause individual issues to predominate."  *Damassia*, 250 F.R.D. at 160.  Any differences it may cite now did not influence its decision to continue to classify all Adjusters as exempt following its review of their duties.  *See Youngblood*, 2011 WL

4597555, at *5 (giving little weight to differences among class members cited by the defendant where such differences were not considered in classifying the class members as exempt); *Myers*, 624 F.3d at 549 ("[A] blanket [classification] policy . . . suggests the employer believes some degree of homogeneity exists among the employees, and is thus in a general way relevant to the [predominance] inquiry . . . .") (citation and internal quotation marks omitted); *Jacob*, 2013 WL 1137024, at *9 (where class members share similar primary job responsibilities and a common understanding of their role in the organization, marginal differences in their day-to-day duties will not predominate over common issues); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (finding that the issue of whether employees were supposed to be paid overtime was "about the most perfect question[] for class treatment").[6]

---

[6]     *See also Alba v. Papa John's USA, Inc.*, No. 05 Civ. 7487, 2007 WL 953849, at *13 (C.D. Cal. Feb. 7, 2007) ("[T]he questions whether store managers are properly classified as 'exempt' and whether the standardized policies and practices throughout Defendants' stores prevent store managers from meeting the definition of 'exempt' are common questions that are more appropriately addressed on a class-wide basis."); *Krzesniak v. Cendant Corp.*, No. 05 Civ. 05156, 2007 WL 1795703, at *13-18 (N.D. Cal. June 20, 2007) (finding predominance based on legal questions of whether employer properly classified all managers as exempt); *Chun-Hoon v. McKee Foods Corp.*, No. 05 Civ. 620, 2006 WL 3093764, at *2 (N.D. Cal. Oct. 31, 2006) (finding that "the common questions concern whether defendant misclassified its distributors as independent contractors instead of employees, and these questions predominate over individual ones"); *Jankowski v. Castaldi*, No. 01 Civ. 0164, 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006) ("The common question of Defendants' alleged failure to pay overtime wages predominates, and this requirement is therefore satisfied."); *Tierno v. Rite Aid Corp.*, No. 05 Civ. 02520, 2006 WL 2535056, at *9 (N.D. Cal. Aug. 31, 2006) (finding predominance based on treatment of all store managers as "one homogenous group" and because "significant aspects" of the case could be resolved on a classwide bases"); *Torres,* 2006 WL 2819730, at *16 (finding that plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and this issue "predominates over any individual calculations of overtime wages"); *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, No. 05 Civ. 2320, 2006 WL 2642528, at *10 (N.D. Cal. Sept. 14, 2006) (finding that question of overtime exemption of class of retail-chain managers predominated and that *"*[t]he Court can more efficiently answer the question of whether Defendant's exemption of all CMs is correct through a class action than through case-by-case adjudication."*); Goldman v. Radioshack Corp.*, No. 03 Civ. 0032, 2005 WL 1124172, at *4 (E.D. Pa. May 9, 2005) (finding that whether "store managers were wrongfully classified as exempt and denied overtime wages" was a predominant

The Court should reject any argument by Allstate that the Supreme Court's recent decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), defeats predominance. *Comcast* restates well-established class-certification principles, but, at least as to this case, has no other applicability. *Comcast* does not articulate any new generally applicable rule of predominance. *See Comcast*, 133 S. Ct. at 1433 ("This case thus turns on the straightforward application of class-certification principles . . . ."); *see also id.* at 1436 (Ginsburg and Breyer, JJ., dissenting) ("the opinion breaks no new ground on the standard for certifying a class action").

Nothing in *Comcast* changes the well-settled principle that proof of classwide damages is not a prerequisite to certification except, arguably, in antitrust cases where classwide injury (i.e., "antitrust impact") is an element of liability. "Recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal." *Id.* at 1437 (Ginsburg and Breyer, JJ., dissenting) (citations omitted).

Interpreting *Comcast* more broadly would run directly afoul of a Supreme Court decision issued just a few weeks earlier. In *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 133 S. Ct. 1184 (2013), a six-justice majority held that "Rule 23(b)(3) . . . does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.'" *Id.* at 1196 (emphasis in original) (citation omitted). And in the weeks since *Comcast* was decided, numerous courts have declined to read *Comcast* broadly, or to extend its holding beyond the antitrust context. In *Clark v. Honey-Jam Cafe, LLC*, No. 11 Civ. 3842, 2013

---

legal issue); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 613 (C.D. Cal. 2005) *abrogated by Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) and *aff'd*, 623 F.3d 743 (9th Cir. 2010) *cert. granted, judgment vacated*, 132 S. Ct. 74, 181 L. Ed. 2d 1 (U.S. 2011) (finding predominance where plaintiffs allege all class members were classified as exempt from overtime pursuant to defendant's policy); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 158 (S.D.N.Y. 2002) (the predominance requirement is satisfied where "[p]laintiffs' claims are based on the alleged across-the-board deprivation of overtime wages").

WL 1789519 (N.D. Ill. Mar. 21, 2013), a wage and hour case, the Seventh Circuit refused to review the District Court's class certification order, which rejected the employer's argument that individualized questions concerning damages predominated and therefore precluded certification.  In a May 28, 2013 decision, the Ninth Circuit recognized the fundamental mismatch between the issue in *Comcast* and the calculation of damages in a wage and hour case:

> It is true that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1435 (2013) . . . .  Here, unlike in *Comcast*, if putative class members prove Medline's liability, damages will be calculated based on the wages each employee lost due to Medline's unlawful practices.

*Leyva v. Medline Indus. Inc.*, 11-56849, 2013 WL 2306567, at *3 (9th Cir. May 28, 2013).  The Court should therefore reject any attempt by Allstate to tie this motion to the wholly inapplicable holding in *Comcast*.  Finally, in a decision certifying a NYLL class earlier this week, Judge William H. Pauley stated very simply, "In an FLSA class, common questions of liability predominate over individual calculations of damages."  *Glatt*, 2013 WL 2495140, at *17.

### 2.    A Class Action is the Superior Mechanism.

Rule 23(b)(3) requires the Court to determine "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In determining whether superiority is met, the Court may consider the following non-exclusive list of relevant factors:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Plaintiffs satisfy all four factors.  First, class members' interests would not be served by individually controlling the prosecution of the action because most lack the resources to even "contemplate proceeding with this litigation in any context other than through their participation in a class action, given the expense and burden that such litigation would entail." *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 304 (S.D.N.Y. 2003).  "[A] class action will save an enormous amount in litigation costs for all parties and allow them to more efficiently prosecute their claims and defenses." *Han*, 2011 WL 4344235, at *11 (citation omitted); *Aponte*, 2011 WL 2207586, at *11 ("Litigating each claim individually would likely result in wasteful and repetitive lawsuits, thus ineffectively utilizing the resources of the judiciary and the parties.").

Second, Plaintiffs are unaware of any litigation begun by members of the proposed class other than this case.  Third, concentrating the litigation in this forum is desirable because Allstate operates numerous offices in this District and the class members work and/or reside there. Fourth, this case is unlikely to present manageability problems because it is of a manageable size and all of the potential class members worked in New York.  *See Torres*, 2006 WL 2819730, at *16 (finding "little reason to expect" manageability problems for class action of New York City grocery workers); *see also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 107 (S.D.N.Y. 2007) ("The determination of whether a particular action is manageable is peculiarly within the discretion of the district court.") (citation and internal quotation marks omitted).

## IV.    **The Court Should Appoint Plaintiffs' Lawyers as Class Counsel.**

The Court should appoint O&G as Class Counsel because they satisfy the requirements of Rule 23(g).  Rule 23(g) requires the Court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge

24

of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Through extensive discovery into the class and collective allegations as well as the filing of motion for collective action notice, O&G has demonstrated the extent to which they have performed substantial work investigating the Adjusters' claims and vigorously prosecuting them. Courts have recognized O&G's "extensive experience prosecuting and settling nationwide wage and hour class and collective actions" and found them to be "well-versed in wage and hour and class action law." *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011); *Westerfield*, 2009 WL 6490084, at *3.

## <u>CONCLUSION</u>

Plaintiffs have met all of the elements of Rule 23 and shown that Allstate has a company-wide policy of misclassifying all Adjusters as exempt employees based on their titles alone. Accordingly, Plaintiffs respectfully request that this Court certify the proposed class pursuant to Fed. R. Civ. P. 23(b)(3), designate the named Plaintiffs as Class Representatives, appoint Plaintiffs' counsel as Class Counsel, and approve Plaintiffs' Proposed Notice to Class Members, attached to the Turner Decl. as Ex. W.

Dated:        June 14, 2013
              New York, New York

                                        Respectfully submitted,

                                        **OUTTEN & GOLDEN LLP**
                                        By:

                                        */s/ Juno Turner*
                                           Juno Turner

                                        **OUTTEN & GOLDEN LLP**
                                        Justin M. Swartz

Ossai Miazad
Juno Turner
Michael J. Scimone
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000