# Exhibit A

DocuSign Envelope ID: 8FD6F78B-D881-4A98-988B-BBE187AF10C2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA VICTORIA PEREZ and KAELA R.M. BROWN, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br> v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>          Defendant. | 11-CV-1812 (AMD) (AKT) |

## JOINT AGREEMENT OF SETTLEMENT AND RELEASE

This Joint Agreement of Settlement and Release is entered into by and between the Parties (as defined below) subject to the approval of the Court as set forth herein.

## RECITALS

WHEREAS, on April 13, 2011, Maria Victoria Perez and Kaela R.M. Brown filed the above-captioned lawsuit, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the New York Labor Law, N.Y. Lab. L. Article 19, §§ 650 *et seq.* ("NYLL"), including putative class and collective claims for unpaid overtime and individual claims of retaliation; and

WHEREAS, the Parties intend in this Agreement to settle fully and finally all claims asserted in the Litigation by Plaintiffs against Defendant; and

WHEREAS, Defendant denies the allegations of wrongdoing asserted in the Litigation, including without limitation that the Named Plaintiffs were retaliated against by any actions taken by Defendant, but agrees to settle the Litigation on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Class Counsel analyzed and evaluated the merits of the claims made against Defendant in the Litigation, conducted interviews with Class Members and Collective Members, conducted depositions of Defendant's employees, defended depositions of multiple Plaintiffs, obtained and reviewed documents relating to the alleged claims, analyzed payroll, employment, and salary records, among other documents, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, and that there

was a risk of future decertification of the class or collective, Class Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiffs; and

WHEREAS, the Parties reached this Agreement as a result of extensive, arms-length settlement discussions, including a day-long mediation with experienced mediator Carol Wittenberg of JAMS in May 2018.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1.    DEFINITIONS.

1.1    Agreement.  "Agreement" means this Joint Agreement of Settlement and Release.

1.2    Acceptance Period.  "Acceptance Period" means the 90-day period during which a Plaintiff must sign and cash a Settlement Check after it has been successfully mailed in order for such Settlement Check to be honored.

1.3    Administrator.  The "Administrator" means a third-party settlement administrator selected by Class Counsel, with Defendant's approval.  The Administrator shall be responsible for mailing the Notices; responding to Class Members' and Collective Members' inquiries; resolving disputes relating to Class Members' and Collective Members' settlement share amounts; calculating Class members' and Collective Members' settlement shares; reporting on the state of the Settlement to the Parties; determining appropriate tax treatment of court-approved Service Payments; distributing settlement payments and withholding Class Members' and Collective Members' share of taxes; remitting such withheld funds to the appropriate taxing authorities; issuing all tax documents associated with the settlement to Class Members, Collective Members, and Class Counsel, including 1099s and W-2s; compiling copies of executed Settlement Checks to provide to Defendant; preparing a declaration regarding its due diligence in the settlement administration process; and performing such other duties as are specified herein, as the Parties may jointly direct, or as ordered by the Court.  The Administrator's fees shall be paid out of the Qualified Settlement Fund as described in paragraph 3.2.

1.4    Class and Collective Claims.  "Class and Collective Claims" means the overtime claims asserted under the FLSA by the Collective Members and under the NYLL on behalf of the Class Members.

1.5    Class Counsel.  "Class Counsel" means Outten & Golden LLP.

1.6    Class Members.  "Class Members" are those individuals who comprise the NYLL class certified by the Court on September 16, 2014, *i.e.*, "[a]ll persons employed by Allstate as 'pending' No-Fault/PIP/Med-Pay adjusters whom Allstate classified as exempt from the overtime requirements of the NYLL at any time between April 13, 2005 and the date of final judgment in this matter," ECF No. 138 at 15 (internal quotation marks omitted).

1.7 Class Notice. "Class Notice" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing to be sent to the Class Members.

1.8 Class Settlement Amount. "Class Settlement Amount" means a total of $3,850,000 to be paid in settlement of the Class and Collective Claims in the Litigation.

1.9 Collective Members. "Collective Members" are those individuals who filed consent to join forms with the Court pursuant to 29 U.S.C. **§ 216(b)** prior to May 9, 2018 as set forth in the official Court docket in the Litigation.

1.10 Collective Notice. "Collective Notice" means the Court-approved Notice of Proposed Settlement of Collective Action Lawsuit to be sent to the Collective Members.

1.11 Court. "Court" means the United States District Court for the Eastern District of New York, the Honorable Ann M. Donnelly presiding.

1.12 Days. "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater.

1.13 Defendant. "Defendant" means Allstate Insurance Company.

1.14 Defendant's Counsel. "Defendant's Counsel" means Seyfarth Shaw LLP and Littler Mendelson, PC.

1.15 Deposed Plaintiffs. "Deposed Plaintiffs" means Kesha Clark, Nicholas D'Ermilio, Lisa Hlatky, Jeff Howard, Marcianne Lobello, Gloria Elaine Sanford, Shvonna Smith, Keisha Sneed, and Clara Rodriguez.

1.16 Effective Date. "Effective Date" shall mean the later of:

(1) 31 days after the entry of the Court's judgment finally terminating the Litigation, if no appeal is taken of such judgment; or

(2) the date on which any appeals of the Court's judgment finally terminating the Litigation are resolved in favor of final approval.

1.17 Employer Payroll Taxes. "Employer Payroll Taxes" means all taxes an employer is required to pay arising out of or based upon the payment of employment compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

1.18 Encompass Tolling Period. "Encompass Tolling Period" means, for Collective Members employed in Defendant's Encompass division, the date three years prior to the date on which that Collective Member filed a consent to join form with the Court pursuant to 29 U.S.C. § 216(b) plus the period from August 31, 2012 to the date of such filing.

1.19 Fairness Hearing. "Fairness Hearing" means the hearing before the Court relating to Plaintiffs' anticipated Motion for Final Approval of the Settlement.

1.20    Final Approval Order.  "Final Approval Order" means the Order to be entered by the Court after the Fairness Hearing, approving the terms and conditions of the Agreement and the distribution of the Settlement Checks and Service Payments, and dismissing the claims in the Litigation with prejudice.

1.21    Individual Claims.  "Individual Claims" means the retaliation claims asserted under the FLSA and NYLL by the Named Plaintiffs.

1.22    Individual Settlement Amount.  "Individual Settlement Amount" means a total of $100,000 to be paid by Defendant to settle the Named Plaintiffs' individual claims for retaliation.

1.23    Litigation.  "Litigation" means the lawsuit captioned *Perez, et al. v. Allstate Insurance Co.*, No. 11 Civ. 1812 (E.D.N.Y.).

1.24    Named Plaintiffs.  "Named Plaintiffs" means Maria Victoria Perez and Kaela R.M. Brown.

1.25    Net Settlement Fund.  "Net Settlement Fund" means the funds remaining of the Class Settlement Amount after payments have been made for (1) attorneys' fees and litigation costs as described in paragraph 3.3, (2) Service Payments as described in paragraph 3.4, (3) the Administrator's fee as described in paragraph 3.2(B), and (4) the $20,000 reserve described in paragraph 3.2(D).

1.26    Notices.  "Notices" means the Class Notice and Collective Notice.

1.27    Objector.  "Objector" means a Class Member who files a valid objection to the settlement of NYLL claims in this Agreement pursuant to paragraph 2.3.

1.28    Opt-Out Statement.  "Opt-Out Statement" means a Class Member's written, signed statement to the Administrator stating his or her desire to opt out of the settlement of NYLL claims in this Agreement and containing the words "I opt out of the *Perez v. Allstate* Litigation settlement."

1.29    Parties.  "Parties" means, collectively, Plaintiffs and Defendant.

1.30    Plaintiffs.  "Plaintiffs" means, collectively, the Named Plaintiffs, Collective Members, and Class Members.

1.31    Preliminary Approval Order.  "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of the settlement contained in this Agreement and directing the manner and timing of providing Notices.

1.32    Qualified Settlement Fund or QSF.  "Qualified Settlement Fund" or "QSF" means the account established by the Administrator for payment of amounts called for by this Agreement.  The QSF shall be controlled by the Administrator subject to the terms of this Agreement and the Preliminary Approval Order and Final Approval Order.  Interest, if any, earned on the QSF will become part of the QSF.

1.33   Releasees.  "Releasees" means Defendant and its past, present and future parent companies, subsidiaries, affiliates, divisions, and joint ventures, and all of its and their past and present shareholders, officers, directors, employees, agents, servants, owners, members, investors, executors, administrators, general partners, limited partners, real or alleged alter egos, predecessors, successors, transferees, assigns, partners, and each of them, and any other related persons or entities.

1.34   Service Payments.  "Service Payments" means the payments sought pursuant to paragraph 3.4 below by Plaintiffs on behalf of the Named Plaintiffs, Collective Member Alexis Cherry, and the Deposed Plaintiffs.

1.35   Settlement Checks.  "Settlement Checks" means checks issued to Class Members and Collective Members for their share of the Class Settlement Amount calculated in accordance with this Agreement.

## 2.   SETTLEMENT PROCEDURES

2.1   Preliminary Approval.

(A)   On or before June 25, 2018, or such other date as the Court may direct, Plaintiffs shall file a motion seeking issuance of the Preliminary Approval Order. In connection with this motion, Plaintiffs shall submit to the Court an executed copy of this Agreement; the proposed Class Notice and Collective Notice; a proposed distribution method for the Net Settlement Fund and calculation of the amounts of the Settlement Checks; and a proposed Preliminary Approval Order. Plaintiffs shall provide Defendant with a copy of the draft motion papers as soon as practicable in advance of filing them with the Court and shall incorporate reasonable revisions requested by Defendant that are consistent with the Parties' intent in this Agreement.

(B)   The motion shall also seek to set date(s) for Class Members to make objections to the NYLL settlement, which date shall be forty-five (45) days from the mailing of the Class Notice to the Class Members, and for a Fairness Hearing before the Court at the earliest practicable date, but no earlier than seventy-five (75) days from the date of the Preliminary Approval Order.

2.2   Notices to Plaintiffs.

(A)   Within ten (10) days of the Court's issuance of a Preliminary Approval Order, Defendant shall provide to the Administrator, in electronic form, for all Plaintiffs, the following information as it exists on file with Defendant at that time: (i) name, (ii) Social Security Number or tax ID number, (iii) last known residential addresses, (iv) last known residential telephone number, (v) dates of employment as a No-Fault/PIP Adjuster during the time period covered by this Agreement, and (vi) for the Collective Members, the date each filed their Consent to Join form with the Court and any tolling period dates, if applicable.

(B)     Within fifteen (15) days of the Court's issuance of the Preliminary Approval Order, the Administrator shall mail to all Plaintiffs, via First Class United States Mail, postage prepaid, the Class Notice and/or the Collective Notice, as applicable.  The Notices shall inform the Plaintiffs about this Agreement, advise the Plaintiffs of the estimated amount of their individual Settlement Check and the formula used to arrive at such estimate, and instruct Class Members about their opportunity to object or opt out with respect to the settlement of NYLL claims reflected in this Agreement.

(C)     If a Class Notice or Collective Notice is returned as undeliverable, the Administrator shall attempt a single re-mailing to the applicable Plaintiff(s) within five (5) days of receiving such notification from the U.S. Postal Service.  The Administrator shall notify Class Counsel and Defendant's Counsel of any Notices that are returned as undeliverable after the first mailing, as well as any Notices returned as undeliverable after the subsequent mailing. The Administrator shall not attempt more than two (2) mailings of the Class Notice or Collective Notice to any Plaintiff.

2.3     Objections by Class Members.

(A)     Class Members who wish to object to the proposed settlement of NYLL claims in this Agreement must do so in writing.  To be considered, a written objection must be mailed to the Administrator via First-Class United States Mail, postage prepaid, and be postmarked by a date certain to be specified on the Class Notice (or the second Class Notice pursuant to paragraph 2.2(C), if applicable).  The deadline for submission of Objections shall be 45 days after the last day on which the Claims Administrator makes a mailing.

(B)     The Class Member's written objection must include the words, "I object to the settlement of the NYLL claims in the *Perez v. Allstate* Litigation" as well as all reasons for the objection.  Any reasons not included in the written objection will not be considered.  The written objection must also include the name, address, and telephone number(s) for the Class Member making the objection.  The Administrator shall stamp the date received on the original and send copies of each objection to Class Counsel and Defendant's Counsel by email no later than three (3) days after receipt thereof.  Class Counsel shall also file the date-stamped originals of any and all objections that have not been withdrawn or otherwise resolved with the Court within three (3) days after the end of the objection period.

(C)     An Objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector at the Objector's expense.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections by including the words, "I intend to appear at the Fairness Hearing" in his or her written objection.

(D)     An Objector may withdraw his or her objections at any time.  No Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with all procedures provided in this paragraph.  No Objector may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections.

(E)     No Collective Member who is not also a Class Member shall be permitted to assert objections to this Agreement.  No Class Member may assert objections to the Agreement other than with respect to the settlement of NYLL Claims contained herein.

2.4    Opt-Outs by Class Members.

(A)     A Class Member may request exclusion from the proposed settlement of NYLL claims in this Agreement by sending an Opt-Out Statement via First Class United States Mail and postmarked by a date certain to be specified on the Class Notice.  The deadline for submission of Opt-Out Statements shall be 45 days after the last day on which the Administrator makes a mailing.  The 45-day period will begin to run from the first mailing, except for those Class Members whose first mailing was returned to the Administrator as undeliverable, in which case the 45-day period for any such Class Member will begin to run from the date of the final mailing to such Class Member.  The Administrator shall, within 10 days after the last day on which it makes such a mailing, notify Class Counsel and Defendants' Counsel in writing of the precise date of the end of the Opt-Out Period.

(B)     The Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies on Class Counsel and Defendants' Counsel not later than three days after receipt thereof.  Class Counsel shall, within three days of the end of the Opt-Out Period, file with the Court stamped copies of any Opt-Out Statements.  The Administrator shall, within 24 hours of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel.  The Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Administrator is relieved of its duties and responsibilities under this Agreement.

(C)     A Class Member who is also a Collective Member may seek exclusion only from the settlement of NYLL Claims contained in this Agreement, and may not seek exclusion from the settlement of FLSA Claims contained in this Agreement.

2.5    Final Approval.  Not later than ten (10) days before the Fairness Hearing, Class Counsel shall submit a motion seeking issuance by the Court of a Final Approval Order.  The Final Approval Order shall, among other things: (1) approve the NYLL settlement as fair, adequate, reasonable, and binding on all Class Members who have not submitted valid Opt-Out Statements pursuant to paragraph 2.4; (2) approve the FLSA settlement as fair, adequate, reasonable and binding on all Collective Members; (3) incorporate the terms of the Releases described in paragraph 4 of this Agreement; (4) award Class Counsel

attorneys' fees and costs pursuant to paragraph 3.3; (5) approve Service Payments to the Named Plaintiffs, Alexis Cherry and the Deposed Plaintiffs as described in paragraph 3.4; and (6) dismiss the Litigation with prejudice. As soon as practicable prior to submission, Plaintiffs shall provide Defendant with a draft of their motion for Final Approval, and shall incorporate reasonable revisions requested by Defendant that are consistent with the Parties' intent in this Agreement.

2.6   CAFA Notice.  Defendant shall timely provide notice as required by the Class Action Fairness Act and provide copies of such to Class Counsel.

## 3.   SETTLEMENT AMOUNTS AND ADMINISTRATION

3.1   Retention of the Administrator.

   (A)   No later than 5 days after full execution of this Agreement, Class Counsel shall advise Allstate's counsel of their proposed Administrator.  The Administrator shall be responsible for the tasks set forth in Paragraph 1.3, as directed by the Parties and the Court, as well as any such tasks as are generally handled by Administrators in similar cases.

   (B)   The Parties shall have equal access to the Administrator. and all information related to the administration of the settlement.  The Administrator shall provide regular reports to the Parties regarding the status of the mailing of the Notices, the administration process, and distribution of the Settlement Checks.

   (C)   Defendant agrees to cooperate with the Administrator, assist the Administrator in locating Class Members and Collective Members, and provide other information related to the administration of the settlement.

3.2   Qualified Settlement Fund.

   (A)   On or before the date the Court issues the Preliminary Approval Order, the Administrator shall establish the QSF.

   (B)   No more than ten (10) days after issuance of the Preliminary Approval Order, Defendant shall transfer $15,000 to the QSF to be held in escrow, in anticipation of administrative costs to be paid to the Administrator.

   (C)   No more than thirty 30 days after issuance of the Final Approval Order, Defendant shall transfer funds in the amount of the Class Settlement Amount (less amounts already deposited pursuant to paragraph 3.2(B)) plus the Individual Settlement Amount to the QSF to be held in escrow, pending distribution pursuant to the terms of this Agreement.  Defendant shall under no circumstances be required to pay more than $3,950,000.00 under the terms of this Agreement, other than the Employer Payroll Taxes addressed in paragraph 3.7(F).

   (D)   The Administrator shall set aside $20,000 of the Class Settlement Amount to cover any correctable errors or omissions, as directed by the Parties, and to satisfy

any claim for relief allowed pursuant to Fed. R. Civ. P. 60(b)(1) or 60(d).  If $20,000 is not sufficient to cover any correctable errors or omissions, and to satisfy any claim for relief allowed pursuant to Fed. R. Civ. P. 60(b)(1) or 60(d), any additional amounts shall come from the amount remaining due to any uncashed Settlement Checks.  If any amounts remain in the Class Settlement Amount 150 days after the Effective Date and after any correctable errors or omissions are covered, the remaining amounts will be redistributed among the Plaintiffs using the method described in Paragraph 3.6; however, if the amount to be redistributed is less than the administrative costs that would be incurred in such redistribution, or if the amount to be redistributed would result in an average payment of less than $50 per Plaintiff, then no redistribution shall occur and the amount shall be donated to National Employment Law Project ("NELP") pursuant to the *cy pres* doctrine.

3.3    Attorneys' Fees and Litigation Expenses.

(A)    Simultaneously with the Motion for Final Approval, Class Counsel shall petition the Court for an award of attorneys' fees of no more than one-third of the Class Settlement Amount ($1,283,333.33), plus litigation expenses actually incurred in the Litigation, to be paid from the Class Settlement Amount.  Defendant shall not oppose the issuance of such an award.

(B)    The substance of Class Counsel's application for attorneys' fees and litigation expenses is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and litigation expenses shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

3.4    Service Payments.

(A)    Simultaneously with the Motion for Final Approval, Class Counsel, on behalf of the Named Plaintiffs, shall apply to the Court for approval of Service Payments in the amount of Twenty Thousand Dollars ($20,000) each to the Named Plaintiffs from the Class Settlement Amount.

(B)    Simultaneously with the Motion for Final Approval, Class Counsel, on behalf of Collective Member Alexis Cherry, shall apply to the Court for approval of a Service Payment to Ms. Cherry in the amount of Two Thousand Five Hundred Dollars ($2,500) from the Class Settlement Amount.

(C)    Simultaneously with the Motion for Final Approval, Class Counsel, on behalf of the Deposed Plaintiffs, shall apply to the Court for approval of a Service Payment to each Deposed Plaintiff in the amount of One Thousand Dollars ($1,000) from the Class Settlement Amount.

(D)    Any Service Payments shall be in addition to the respective Plaintiff's Settlement Award pursuant to paragraph 3.6.

9

(E)  Defendant shall not oppose the approval of Service Payments as set forth in this paragraph.

(F)  The applications for Service Payments are to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of the Court's ruling on the application for Service Payments will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

3.5  Allocation of the Individual Settlement Amount.  Each of the Named Plaintiffs shall receive, in addition to her respective Settlement Award pursuant to paragraph 3.6(C) and her Service Payment pursuant to paragraph 3.4(A), a payment in the amount of $50,000 in settlement of her respective individual claims of retaliation.

3.6  Allocation of the Class Settlement Amount.  The Class Settlement Amount shall be paid to Class Members and Collective Members pursuant to the following formula:

(A)  Each Class Member (other than those who have submitted valid Opt-Out Statements pursuant to paragraph 2.4) shall be assigned one point for each week worked as a Class Member between April 13, 2005 and the date of the Preliminary Approval Order.

(B)  Each Collective Member who is not also a Class Member shall be assigned one point for each week worked as a Collective Member between the date three years prior to the date on which that Collective Member opted in to the Litigation (or, for Collective Members employed in Defendant's Encompass division, the Encompass Tolling Period) and the date of the Preliminary Approval Order.  The date of each Collective Member's opting in shall be the filing date of the Collective Member's consent to join form as indicated on the Court's official docket in the Litigation.

(C)  For Plaintiffs who are both Class Members and Collective Members, their share of the Net Settlement Fund shall be calculated according to the formula applicable to Class Members set forth above.  No Collective Member who is also a Class Member shall receive an allocation other than with respect to his or her status as a Class Member.  Notwithstanding the preceding sentence, if a Collective Member who is also a Class Member submits a valid Opt-Out Statement pursuant to paragraph 2.4(C), that Collective Member's share of the Net Settlement Fund shall be calculated as set forth in paragraph 3.6(B).

(D)  To calculate each Plaintiff's proportionate share:

(1)  Add all points for all Class Members and Collective Members together to obtain the "Total Denominator;"

(2)  Divide the number of points for each Class Member and Collective Member by the Total Denominator to obtain each Class Member's and Collective Member's respective "Portion of the Settlement Fund."

(3)     Multiply each Class Member's and Collective Member's Portion of the Settlement Fund by the amount of the Net Settlement Fund to determine each Class Member's and Collective Member's respective "Settlement Award."

3.7     Tax Characterization.

(A)     For tax purposes, (1) payments made to Named Plaintiff Brown pursuant to Section 3.5 shall be treated as 25% wages (net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and reported to the Internal Revenue Service ("IRS") and Brown under Brown's name and social security number or tax ID number on an IRS Form W-2) and 75% non-wages (made without withholding and reported to the IRS and Brown under Brown's name and social security number or tax ID number on an IRS Form 1099), and (2) payments made to Named Plaintiff Perez pursuant to Section 3.5 shall be treated as 25% wages (net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and reported to the IRS and Perez under Perez's name and social security number or tax ID number on an IRS Form W-2), and 75% non-wages (made without withholding and reported to the IRS and Perez under Perez's name and social security number or tax ID number on an IRS Form 1099).

(B)     For tax purposes, 50% of payments to Class Members and Collective Members pursuant to Section 3.6 shall be treated as back wages and 50% of such payments shall be treated as non-wages relating to claims for interest, liquidated damages, and other non-wage damages.

(C)     Payments treated as wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the IRS and the payee under the payee's name and social security number or tax ID number on an IRS Form W-2.  Payments treated as non-wages shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and social security number or tax ID number on an IRS Form 1099.

(D)     Payments of attorneys' fees and litigation expenses pursuant to Paragraph 3.3 shall be reported to the IRS on behalf of Class Counsel on a Form 1099 issued to Class Counsel with the taxpayer identification number of Class Counsel.

(E)     The Plaintiffs and Class Counsel acknowledge and agree that Defendant has not made any representations regarding the tax consequences of any monies they may receive pursuant to this Agreement.  The Plaintiffs and Class Counsel understand and expressly agree that they are solely responsible for payment of any income or other taxes, including any interest or penalties thereon, arising from any payments pursuant to this Agreement, except for Employer Payroll Taxes.

(F)     Within three (3) days after the Final Approval Order, the Administrator shall inform the Parties of an estimate of all state and federal payroll taxes imposed by applicable law, including Employer Payroll Taxes, with respect to the amounts treated as wages.  Defendant shall pay this amount on the same date as it funds the portion of the QSF as set forth in paragraph 3.2(C).

3.8     Distribution of Payments.

(A)     Within ten (10) days of the Defendant's payment into the QSF pursuant to paragraph 3.2(C), the Administrator shall send Settlement Checks, as calculated above, to Class Members who have not opted out and to all Collective Members. Settlement Checks shall be sent by First Class United States Mail, postage prepaid.  The Administrator shall use any confirmed mailing addresses obtained following the mailing of the Notices.  If any Settlement Checks are returned as undeliverable, the Administrator shall take all reasonable steps to obtain a correct address and shall attempt up to three re-mailings either to the same address, or to any updated address obtained.  The Claims Administrator shall notify Class Counsel and Defendant's Counsel of any Settlement Checks that are returned as undeliverable after the first mailing and of the results of the subsequent mailings. The Notices and the Settlement Checks shall indicate the Acceptance Period.  The Administrator shall notify the Parties in writing of the beginning and end of the Acceptance Period.

For all Class Members who are not also Collective Members, their Settlement Checks shall contain on the back of the check the following endorsement:

---

### POSITIVE I.D. REQUIRED

THIRD PARTY ENDORSEMENT PROHIBITED

ENDORSEMENT BY NAMED PAYEE IS REQUIRED, WITHOUT ANY ALTERATION OF THE FOLLOWING LANGUAGE

This instrument is void if not cashed before **[insert last date of Acceptance Period].**

1. <u>CONSENT TO JOIN</u>

I hereby consent to join the lawsuit captioned *Perez v. Allstate Insurance Co.,* Civil Action No. 11-CV-1812 (AMD) (AKT) (E.D.N.Y.) ("*Perez*"), as a party plaintiff for purposes of the claims asserted against the Defendant therein under the Fair Labor Standards Act. I am or was employed by Allstate Insurance Company (and/or its Encompass division) for some or all of the period between April 13, 2008 and **[insert date of Final Approval].**

2. <u>RELEASE OF CLAIMS</u>

I accept this payment in full satisfaction of my portion of the settlement in *Perez* as to the claims that were asserted in this case under the Fair Labor Standards Act, the New York Labor Law, and any other claims concerning hours worked or payment of wages. My endorsement or negotiation of this instrument constitutes full acceptance by me and my successors and assigns of all the terms and conditions of the Settlement Agreement in *Perez,* as approved by the Court, including but not limited to the Release of Claims included in the Settlement Agreement and reproduced in the **[insert title of Notice].**

[NAME OF PAYEE]

X_____

   SIGNATURE OF PAYEE

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE – RESERVED FOR FINANCIAL INSTITUTION USE

---

(B)     To be accepted for payment, the Settlement Check must be endorsed by the Class Member within the Acceptance Period with no alteration to the language thereupon.  Any alteration of such language shall render the check null and void.

(C)     If any Class Member or Collective Member deposits a Settlement Check that he or she has failed to properly endorse, or has altered, the Administrator shall make best efforts to ensure that this check is not honored and will notify counsel for the parties for further instruction.

(D)     If a Settlement Check is paid despite the Administrator's best efforts, the Class Member or Collective Member shall be deemed to have endorsed the check properly and shall be bound by all waivers, releases and other provisions of this Agreement, including without limitation the release of claims applicable to such Class Member or Collective Member.  To the maximum extent permitted by law, a Class Member or Collective Member shall be bound by all provisions of this

Settlement Agreement regardless of whether that person has properly or timely presented for payment the check issued pursuant to this Agreement, or the check is honored. Fifteen days prior to the end of the Acceptance Period, the Administrator will advise Class Counsel of any uncashed checks so that Class Counsel may contact the Class or Collective Members to encourage them to cash their checks, but in no event shall such efforts enlarge or delay the end of the Acceptance Period.

(E)     Within ten (10) days after the Defendant's payment into the QSF pursuant to paragraph 3.2(C), the Administrator shall issue each Named Plaintiff a payment of $50,000 from the Individual Settlement Amount.

(F)     Within ten (10) days after the Defendant's payment into the QSF pursuant to paragraph 3.2(C), the Administrator shall make a payment from the Class Settlement Amount to satisfy any award of attorneys' fees and litigation expenses approved by the Court's Final Approval Order.

(G)     Within ten (10) days after the Defendant's payment into the QSF pursuant to paragraph 3.2(C), the Administrator shall make a payment from the Class Settlement Amount to satisfy any Service Payments approved by the Court's Final Approval Order.

(I)     Within ten (10) days after the Defendant's payment into the QSF pursuant to paragraph 3.2(C), the Administrator shall make a payment of $15,000 from the Class Settlement Amount to satisfy the Administrator's fees.

## 4.    RELEASES

4.1     By Collective Members. By operation of the entry of the Final Approval Order, and except as to such rights or claims as may be created by this Agreement, each individual Collective Member will forever and fully release the Releasees, with prejudice, from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses and losses arising under the FLSA with respect to such Collective Member's employment by Allstate as a No-Fault/PIP/Med-Pay Adjuster at any time through the date of the Preliminary Approval order, including but not limited to claims for wages, overtime pay, liquidated or other damages, failure to make timely wage payments, failure to provide meal and rest periods, costs, or other payments.

4.2     By Class Members.

(A)     Class Members Who Are Also Collective Members. By operation of the entry of the Final Approval Order, and except as to such rights or claims as may be created by this Agreement, each individual Class Member who did not submit a timely and valid Opt-Out statement pursuant to paragraph 2.4 and who was also a Collective Member as of May 9, 2018, will forever and fully release the Releasees, with prejudice (1) as set forth in paragraph 4.1, and (2) from any and all causes of action, claims, rights, and losses of any kind or nature whatsoever arising under the NYLL with respect to their employment by Allstate as a No-

Fault/PIP/Med-Pay Adjuster at any time through the date of the Preliminary Approval Order, including but not limited to claims for wages, overtime pay, liquidated or other damages, penalties, failure to make timely wage payments, failure to provide meal and rest periods, costs, or other payments.

(B)    Class Members Who Are Not Collective Members.

    (1)    By operation of the entry of the Final Approval Order, and except as to such rights or claims as may be created by this Agreement, each individual Class Member who was not also a Collective Member as of May 9, 2018 and who did not submit a timely and valid Opt-Out statement pursuant to paragraph 2.4 will forever and fully release the Releasees, with prejudice, from any and all causes of action, claims, rights, and losses of any kind or nature whatsoever arising under the NYLL with respect to their employment by Allstate as a No-Fault/PIP/Med-Pay Adjuster at any time through the date of the Preliminary Approval Order, including but not limited to claims for wages, overtime pay, liquidated or other damages, penalties, failure to make timely wage payments, failure to provide meal and rest periods, costs, or other payments.

    (2)    By endorsing and presenting for payment a Settlement Check, each individual Class Member who was not also a Collective Member as of May 9, 2018 will, in addition to the release set forth in paragraph 4.2(B)(1), forever and fully release, with prejudice, any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses and losses against Releasees arising under the FLSA with respect to their employment by Allstate as a No-Fault/PIP/Med-Pay Adjuster at any time prior to the date of the Preliminary Approval order, including but not limited to claims for wages, overtime pay, liquidated or other damages, failure to make timely wage payments, failure to provide meal and rest periods, costs, or other payments.

4.3    By Named Plaintiffs.  By operation of the entry of the Final Approval Order, and except as to such rights or claims as may be created by this Agreement, in consideration for the Service Payments described above and payment of the Retaliation Claims Settlement Amount, each Named Plaintiff completely and irrevocably releases all claims and causes of action which she has or ever had, until the date of the Court's Preliminary Approval Order, against the Releasees, including without limitation the claims released pursuant to paragraphs 4.1 and 4.2 above and claims for retaliation under the NYLL and/or FLSA.

4.4    To the fullest extent allowed by law, the Named Plaintiffs, Collective Members and Class Members shall be prohibited from asserting any claims released by them in this Agreement, and from commencing, joining in, prosecuting, or voluntarily assisting in a lawsuit or adversarial proceeding against the Releasees based on claims released by them by operation of this Agreement.

DocuSign Envelope ID: 8FD6F78B-D881-4A98-988B-BBE187AF10C2

4.5     Release of Claims for Attorneys' Fees and Costs.  Except as provided in this Agreement, Class Counsel and Named Plaintiffs, on behalf of the Class Members and Collective Members individually and collectively, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she, or they may have against the Releasees for attorneys' fees or costs associated with Class Counsel's representation of the Class and Collective Members in the Litigation.  Class Counsel further agrees that any fee payments approved by the Court will be the full, final, and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Litigation.

**5.      MISCELLANEOUS PROVISIONS**

5.1     Continuing Jurisdiction.  The Court shall retain jurisdiction over: (a) the interpretation and implementation of this Agreement; (b) any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and/or the settlement contemplated thereby; and (c) any disputes arising out of this Agreement, including actions or motions to enforce this Agreement.

5.2     **Non-Admission of Liability.**  Defendant has agreed to the terms of settlement herein without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of Defendant's business due to the pendency and expense of litigation, and put the claims in the Litigation fully and finally to rest.  Nothing in this Agreement shall be deemed or used as an admission of liability by Defendant, or as an admission that class or collective treatment is appropriate for any purpose other than settlement purposes.

5.3     Binding Agreement.  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

5.4     Cooperation Between the Parties; Further Acts.  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.  In the event that the Parties are unable to reach resolution on the form or content of any document needed to implement this Agreement, or on any supplemental provisions or actions that may become necessary to effectuate the terms of this Agreement, the Parties shall seek the assistance of the mediator, Carol Wittenberg, to resolve such disagreement.

5.5     No Assignment.  Class Counsel and Named Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

5.6     Entire Agreement.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous

negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.7    Binding Effect.  This Agreement shall be binding upon the Parties and, with respect to the Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

5.8    Arms' Length Transaction; Materiality of Terms.  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.9    Captions.  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.10   Construction.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement, are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.11   Effect of Failure to Grant Preliminary or Final Approval.  In the event the Court fails to issue a Preliminary Approval Order or Final Approval Order substantially in accordance with the terms set forth in this Agreement, or the Final Approval Order is reversed or vacated, then:

(A)    The Parties shall engage in follow up negotiations with the intent of resolving the Court's concerns that precluded approval, and if feasible, to resubmit the settlement for approval within thirty (30) days.

(B)    If the Agreement is not approved as resubmitted or if the Parties are not able to reach another agreement, then the Named Plaintiffs or Defendant, in their sole discretion, may void this Agreement.  At that point, the Parties shall return to their respective positions in the Litigation as of May 8, 2018 as if no settlement had been attempted or reached and this Agreement shall not be used in evidence or argument in any other aspect of the Litigation or otherwise against any other party.

(C)    If Notices had been issued pursuant to paragraph 2.2, then the Parties shall seek Court approval of a notice to Class Members and Collective Members that the Agreement did not receive final approval and that, as a result, no payments shall be made to Class Members or Collective Members under the Agreement.  Such notice shall be mailed by the Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Administrator in mailing the Notices.  The Parties will split equally the cost of any such notice.

(D)   The amounts remaining in the QSF, including any interest then accrued, shall be returned to Defendant.

5.12   Confidentiality Prior to Court Submission.  The Parties and their counsel agree that they shall keep the terms of the Agreement confidential until such time as the Agreement is presented to the Court for preliminary approval, except that Class Counsel and the Named Plaintiffs may discuss the terms of the agreement with Plaintiffs.

5.13   Inadmissibility of Agreement. Except for purposes of resolving the Litigation or enforcing its terms (including that claims were settled and released), resolving an alleged breach, or for resolution of other tax or legal issues arising from a payment under this Agreement, neither this Agreement, nor its terms, nor any document, statement, proceeding or conduct related to this Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession or damage.

5.14   Governing Law.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.15   Continuing Jurisdiction.  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby, to the extent such matters are not resolved between the parties pursuant to Section 5.4.

5.16   Waivers, etc. to Be in Writing.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Effective Date, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.17   Counterparts.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.  Any signature made and transmitted by facsimile or electronic means for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or electronic means.

DocuSign Envelope ID: 8FD6F78B-D881-4A98-988B-BBE187AF10C2

5.18    Signatures of Named Plaintiffs.  This Agreement shall be valid and binding only if signed by Defendant's authorized representative and both Named Plaintiffs.  No signatures shall be required of any other Plaintiffs.

5.19    Authorization to Enter Into Agreement. The Named Plaintiffs and Defendant warrant and represent that they are authorized to enter into this Agreement and to take all appropriate action required or permitted to be taken pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement.

[SIGNATURES ON FOLLOWING PAGE]

## ACCEPTED AND AGREED

DATED: _____, 2018          ALLSTATE INSURANCE COMPANY


By: _____


Its: _____



DATED: 6/29 , 2018          MARIA VICTORIA PEREZ

By: _____

DATED: 07/01 , 2018          KAELA R.M. BROWN

By: _____

**ACCEPTED AND AGREED**

DATED: June 29, 2018 ALLSTATE INSURANCE COMPANY

By:

Its: Glenn Shapiro

President, Allstate Personal Lines

DATED:    , 2018 MARIA VICTORIA PEREZ

By:

DATED:    , 2018 KAELA R.M. BROWN

By: