**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MARIA VICTORIA PEREZ and KAELA R.M. BROWN, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>Defendant. | **Case No. 11 Civ. 1812** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND
<u>APPROVAL OF THE FLSA SETTLEMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .......................................................... 2

I.      Procedural History ..................................................................................................... 2

II.     Settlement Administration ........................................................................................ 5

        A.      Inclusion of Improper Class Members .................................................... 5

        B.      Class Data and Notice Issues with Respect to Rule 23 Class Members ............... 5

        C.      Resolution of Data Errors and Pending Corrective Notice Proposal ...................... 6

SUMMARY OF THE SETTLEMENT TERMS ................................................................. 7

I.      The Settlement Fund ................................................................................................... 7

II.     Eligible Employees ..................................................................................................... 8

III.    Releases ........................................................................................................................ 8

IV.     Allocation Formula .................................................................................................... 9

V.      Attorneys' Fees, Litigation Costs, and Expenses .................................................. 10

VI.     Service Awards ......................................................................................................... 10

VII.    Settlement Claims Administration ......................................................................... 10

ARGUMENT ....................................................................................................................... 11

I.      The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in
        All Respects. ............................................................................................................. 11

        A.      The Proposed Settlement Is Procedurally Fair .................................... 11

        B.      The Proposed Settlement Is Substantively Fair. ................................. 13

                1.      Litigation Through Trial Would Be Complex, Costly, and Long
                        (*Grinnell* Factor 1). ..................................................................... 13

                2.      The Reaction of the Class Has Been Positive (*Grinnell* Factor 2). ........... 15

                3.      Discovery Has Advanced Far Enough to Allow the Parties to Resolve the
                        Case Responsibly (*Grinnell* Factor 3). ...................................... 16

4.    Plaintiffs Would Face Real Risks if the Case Proceeded
(*Grinnell* Factors 4 and 5). ..............................................................17

5.    Maintaining the Class Through Trial Would Not Be Simple
(*Grinnell* Factor 6). ........................................................................18

6.    Defendant's Ability to Withstand a Greater Judgment Is Not
Determinative (*Grinnell* Factor 7). .................................................19

7.    The Settlement Fund Is Substantial, Even in Light of the Best
Possible Recovery and the Attendant Risks of Litigation
(*Grinnell* Factors 8 and 9)...............................................................19

II.    Approval of the FLSA Settlement Is Appropriate Under Federal Law. ...........................21

CONCLUSION..............................................................................................................22

## TABLE OF AUTHORITIES

CASES                                                                         PAGE(S)

*Ansoumana v. Gristede's Operating Corp.*,
   201 F.R.D. 81 (S.D.N.Y. 2001) ..........................................................................................21

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche*
   *Bank*, 236 F.3d 78 (2d Cir. 2001) ..............................................................13, 16, 17

*In re BankAmerica Corp. Sec. Litig.*,
   210 F.R.D. 694 (E.D. Mo. 2002) ......................................................................................12

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................11, 15, 16

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
   No. 07 Civ. 2207, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ...........................................15

*Cagan v. Anchor Sav. Bank FSB*,
   No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990).............................................20

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.*
   *Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ............................................ *passim*

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001).................................................................................................11

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011) ............................................................................15

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005).............................................................................17, 19

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610, 06 Civ.
   304, 06 Civ. 347, 06 Civ. 1684, 2007 WL 2230177 (S.D.N.Y. July 27, 2007).....................12

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969) ................................................................................17

*Johnson v. Big Lots Stores, Inc.*,
   561 F. Supp. 2d 567 (E.D. La. 2008) ............................................................................18

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ......................................................................................21

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................. 15

*Massiah v. MetroPlus Health Plan*
    No. 11 Civ. 05669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012); ...................... 21

*McKenna v. Champion Intern. Corp.*,
    747 F.2d 1211 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-*
    *LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989) ................................................... 21

*Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................... 20

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................... 17

*Reyes v. Altamarea Group, LLC*,
    No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. August 16, 2011) ...................... 21

*Sewell v. Bovis Lend Lease Inc.*,
    No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. 2012) ........................................ 12

*Sierra v. Spring Scaffolding LLC*,
    No. 12 Civ. 05160, 2015 WL 10912856 (E.D.N.Y. Sept. 30, 2015) ................. 15, 21

*Spann v. AOL Time Warner, Inc.*,
    No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ........................... 11

*Strauch v. Computer Sciences Corp.*,
    No. 14 Civ. 956 (D. Conn.) ........................................................................ 14, 15, 18

*Strauch v. Computer Scis. Corp.*,
    No. 14 Civ. 956, 2018 WL 5870337 (D. Conn. Nov. 9, 2018) ............................. 18

*Sukhnendan et al. v. Royal Health Care of Long Island d/b/a Royal Health Care*
    No. 12 Civ. 4216, 2014 WL 3778173 (S.D.N.Y. 2014) ....................................... *14*

*Surdu v. Madison Glob., LLC*,
    No. 15 Civ. 6567, 2018 WL 1474379 (S.D.N.Y. Mar. 23, 2018) ......................... 17

*Tiro v. Pub. House Invs., LLC*,
    No. 11 Civ. 7679, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ........................ 11

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ........................ 12

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ......................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................................11, 12

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)...............................................................................................16

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)..........................................15

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)................................................................................15

## INTRODUCTION

Plaintiffs Maria Victoria Perez and Kaela R.M. Brown ("Plaintiffs") submit this Memorandum of Law in Support of their Motion for Final Approval of the Class Action Settlement and Approval of the FLSA Settlement ("Motion for Final Approval"). On March 29, 2019, this Court took the first step in the settlement approval process by preliminarily approving the Parties' Settlement Agreement and directing notice to the class members. This Motion asks the Court to take the remaining steps to finalize the settlement approval process.

First, Plaintiffs respectfully request that the Court approve a series of corrective notices to class and collective members who received incorrect information through the notice process, as described by the parties' previous filings, and resolve the parties' disputes related to that process. *See* ECF No. 210. A proposed order reflecting this relief is attached as Exhibit A to this Motion. Additionally, Plaintiffs request that the Court schedule a fairness hearing as soon as is reasonably possible.

Second, upon the conclusion of the notice process and following the fairness hearing, Plaintiffs respectfully request that the Court grant final approval of the settlement and authorize the Settlement Administrator to issue payment to the Plaintiffs, Class Members, and FLSA Collective Members and to perform the administrative obligations set forth in the Settlement Agreement. A proposed order reflecting this relief is attached as Exhibit B to this Motion.

To date, no Class Members have excluded themselves from this settlement and none have objected to its terms.[1] Since sending notice, Class Counsel has received at least 153 phone calls

---

[1]      Only seven individuals have yet to receive a notice allowing them these options. Should any objection arise after the distribution of corrective notice and settlement award allocation, Plaintiffs will address them in a separate filing prior to the fairness hearing.

and emails from Class Members eager to know when the settlement will be finalized.  With such overwhelming support, this Settlement is ripe for approval.

Final approval of the settlement will deliver approximately $2.5 million in back wages to the Class Members at an especially opportune time, given the state of the economy and the uncertainty that workers, including the Class Members, face.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History

On April 13, 2011, Plaintiffs filed the instant action seeking to recover overtime wages on behalf of current and former no-fault Claims Adjusters employed by Allstate.  *See* ECF No. 1, Complaint.  Plaintiffs alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), N.Y. Lab. L. Article 19 §§ 650 *et seq.* due to Allstate's misclassification of these Claims Adjusters as exempt from overtime payment, and pled additional claims of retaliation on behalf of Plaintiff Brown.  *Id.*; Declaration of Justin M. Swartz ("Swartz Decl.") ¶ 15.

On June 3, 2011, Allstate filed its answer, denying Plaintiffs' claims in their entirety. ECF No. 10, Answer.  On November 22, 2011, Plaintiffs filed an amended complaint, pleading additional retaliation claims on behalf of Plaintiff Perez.  ECF No. 21.  On April 3, 2012, Plaintiffs moved to conditionally certify the FLSA collective.  ECF No. 33.  On May 2, 2012, Allstate filed an opposition that challenged only Plaintiffs' Proposed Notice and Notice procedure.  ECF No. 41.  In June of 2012, the Parties reached agreement on these issues and stipulated to conditional certification of the FLSA collective.  ECF No. 50.

On  June 14, 2013, Plaintiffs moved to certify a NYLL Class.  ECF No. 115.  Allstate opposed this motion, ECF No. 126, and simultaneously filed a motion to decertify the FLSA collective, ECF No. 127, arguing in both filings that differences among no-fault Claims

Adjusters rendered class treatment inappropriate. After full briefing and oral argument by the Parties, the Court granted certification of a NYLL Class of "pending"[2] No-Fault/PIP/Med-Pay adjusters who had been classified as exempt during the relevant period. ECF No. 138 at 2, 15. The Court simultaneously denied Allstate's motion to decertify the FLSA collective. *Id.* Notice of the Court's certification order was sent to the class; no class member opted out of the case. Swartz Decl. ¶ 19.

In or around February 2016, Allstate discovered that it had inadvertently excluded a group of Adjusters from earlier class lists that it had produced. Swartz Decl. ¶ 21. Plaintiffs sent a second FLSA notice to these Adjusters, 11 of whom opted in to the case. *Id.*

Both before and after the original Class Certification order, the parties engaged in extensive class-wide discovery. *Id.* ¶ 20. Allstate deposed 11 Adjusters and Plaintiffs deposed seven corporate fact and Rule 30(b)(6) witnesses. *Id.* Both parties produced a substantial volume of documents. *Id.*

In May 2015, the Court invited the parties to participate in settlement discussions, but the negotiations were not successful and the litigation proceeded. ECF Nos. 147-48.

In September 2017, pursuant to Rule 4(B) of the Court's individual practices, the parties agreed on a schedule for an exchange of Local Rule 56.1 statements in anticipation of Allstate's motion for summary judgment. ECF No. 173. On October 30, 2017, Allstate provided Plaintiffs with its initial Rule 56.1 statement. Swartz Decl. ¶ 22. On January 9, 2018, Plaintiffs provided Allstate with their opposition to its 56.1 Statement. *Id.* On January 16, 2018, Allstate submitted to the Court a pre-motion letter outlining its proposed motion for summary judgment and

---

[2]    The "pending" distinction was noted in Plaintiffs' moving brief, ECF No. 116 at 3 n.3, and described in declarations filed by Allstate in opposition to Plaintiffs' motion. *See* ECF Nos. 126-3 (Witherspoon Decl.) ¶ 2; 126-5 (Wade Decl.) ¶ 3; 126-6 (Turturro Decl.) ¶ 3.

attached its 56.1 statement and Plaintiffs' opposition to the same.  ECF No. 175.  On January 23, 2016, Plaintiffs filed their opposition to Allstate's pre-motion letter.  ECF No. 176.  On February 15, 2018, the parties appeared for a pre-motion conference, during which the Court advised the parties that there appeared to be disputes of material fact.  Swartz Decl. ¶ 23.  The Court nevertheless set a briefing schedule for the motion and set the case for trial starting on June 25, 2018. ECF No. 180.

Shortly after the pre-motion conference, the parties agreed to engage in mediation in an attempt to resolve the case before trial.  Swartz Decl. ¶ 24.  In light of the impending trial date, however, the parties continued to prepare for trial in the event that mediation was unsuccessful. *Id*.

On May 9, 2018, the parties held an in-person, day-long negotiating session with experienced mediator Carol A. Wittenberg of the Judicial Arbitration and Mediation Services ("JAMS").  Swartz Decl. ¶ 27.  In advance of the mediation, Allstate provided Plaintiffs with payroll records and dates of employment for Class and Collective Members.  *Id.* ¶ 29.  Plaintiffs analyzed these data and constructed a damages model.  *Id*.  At the conclusion of the mediation session, the parties reached agreement on the material terms of the Settlement.  *Id.* ¶ 32.  In the following weeks, the Parties negotiated the remaining details of the Settlement Agreement.  *Id*. At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis.  Swartz Decl. ¶ 33.

On July 2, 2018, Plaintiffs filed their Unopposed Motion for Preliminary Approval of the Settlement, Proposed Notice of Settlement, and Class Action Settlement Procedure.  ECF No. 192.  Judge Donnelly referred the pending Motion to this Court for a Report and Recommendation.

On March 29, 2019, the Parties consented to the jurisdiction of this Court for all purposes. ECF No. 201. That same day, the Court completed the first step in the two-step settlement approval process by preliminarily approving the Parties' Settlement Agreement, directing that notice be sent to Class and FLSA Collective members, and setting a date for the final fairness hearing. ECF No. 202; Swartz Decl. ¶ 35.

## II.    Settlement Administration

After the Court granted preliminary approval, several difficulties in settlement administration arose, which have been brought to the Court's attention through a series of updates. *See* ECF Nos. 206, 208-210, 212-213.

### A.    Inclusion of Improper Class Members

In April 2019, Allstate alerted Plaintiffs that 13 of the opt-in Plaintiffs who received notice of the action back in 2012 were mistakenly included in the class list, despite the fact that they either (1) had never worked in an Adjuster position (and in most cases had been paid overtime in their actual titles), or (2) had time-barred claims. Swartz Decl. ¶ 39. The parties stipulated to amend the settlement to provide these opt-ins with a small allocation from the settlement fund as consideration for the release they will provide when they cash their settlement checks. *See* ECF No. 207.

### B.    Class Data and Notice Issues with Respect to Rule 23 Class Members

On May 6, 2019, the claims administrator mailed the settlement notice. Swartz Decl. ¶ 40. After the notice was mailed, it came to the parties' attention that the claims administrator had (1) failed to correct the notices to the opt-ins who were subject to the parties' stipulated amendment, so that they were told that they were receiving a much larger settlement share than the parties had agreed to; and (2) had erroneously sent FLSA notices to approximately 21 NYLL class members. *Id.* ¶ 41. These notices both underestimated the class members' awards and

failed to offer them the options to object or opt out of the settlement agreement, as required by
Rule 23. *Id.*

Two other issues arose due to data errors in the class list.  First, the original class list used
for the settlement notice included eight Field Adjusters who did not work in the no-fault
positions at issue in this litigation, but who received notice as a result of the error. *Id.* ¶ 43.
Second, some adjusters on the list were "dispute" Adjusters rather than "pending" Adjusters, and
therefore did not fit the definition of the class that Judge Bianco had certified. *Id*. Further
complicating this second issue, some dispute Adjusters had received the opt-in notice in 2012, or
the Rule 23 notice in 2014. *Id*. Eight of those dispute Adjusters opted into the case, and all of
those receiving the class action notice had previously been informed that they were members of
the Class. *Id*.

On June 27, 2019, Plaintiffs filed a letter informing the Court of these issues and
requesting that the fairness hearing be adjourned to allow the parties to confer and agree on an
appropriate course of corrective action. *See* ECF No. 208.  On July 17, 2019, the Parties jointly
requested an extension of time to investigate the notice issues, and proposed to send corrective
notice to certain members of the Rule 23 class who had received FLSA notices. *See* ECF No.
209, 209-1.  On July 19, 2019, the Court approved this proposal, allowing a thirty day opt-out
and objection period, which closed on August 29, 2019.  Swartz Decl. ¶ 42.

### C.    Resolution of Data Errors and Pending Corrective Notice Proposal

On August 9, 2019, the parties filed a status report explaining their findings, proposing a
set of corrective measures requiring Court approval, and a presenting discrete number of
disagreements between the parties regarding specifics of the notice plan, to be resolved by the
Court.  See ECF No. 210.  Plaintiffs proposed to file their motions for final approval, approval of

6

attorneys' fees and costs, and approval of service awards to the named Plaintiffs on September 16, 2019 and requested that the fairness hearing be scheduled on or after September 23. *See id.* Part E.  On September 16, 2019, Plaintiffs requested permission to file their Final Approval Motions within seven days prior to the fairness hearing date.  ECF No. 216.  On December 4, 2019, Class Counsel advised the Court that the parties had agreed on the final corrected settlement allocation amounts and the list of individuals to receive the proposed corrective notices.  ECF No. 217.

The parties' corrective notice plan seeks to finalize the notice process by (1) sending a corrective notice to the non-Adjuster opt-ins receiving a reduced settlement share pursuant to the parties' stipulation; (2) sending a letter to the Field Adjusters informing them that they were not included in the settlement; (3) stipulating to include the opt-in Dispute Adjusters in the class and collective (*see* ECF No. 211); (4) sending a corrected Rule 23 notice to the seven included Dispute Adjusters who did not previously receive one; and (5) informing Dispute Adjusters who were removed from the class that they would not be covered by the settlement.[3]  *See* ECF No. 210.  These requests are now ripe for the Court's resolution.

## SUMMARY OF THE SETTLEMENT TERMS

### I.    The Settlement Fund

Pursuant to the Settlement Agreement, Allstate will pay a total of $3,850,000.00 to resolve the claims of Plaintiffs, the Class, and the Collective (the "Settlement Amount").  Swartz Decl. ¶ 49; Ex. A[4] § 1.8.  The Settlement Amount includes Court-approved service payments to

---

[3]    Plaintiffs request that the claims of these Dispute Adjusters be tolled for 30 days. Allstate opposes this request.  *See* ECF No. 210 at 4-5; ECF No. 212.

[4]    Unless otherwise indicated, all exhibits are attached to the Swartz Declaration. Capitalized terms in this memorandum have the definitions set forth in the Settlement Agreement.

the Named Plaintiffs and certain Opt-in Plaintiffs, Court-approved attorneys' fees, costs and

expenses; administration costs; and a fund for errors and omissions. Ex. A § 1.25. Once

deducted from the Settlement Amount, the remaining Net Settlement Fund will be distributed

among the Class and Collective as described below. In addition to the Settlement Amount,

Allstate will make payments of $50,000.00 each to both Named Plaintiffs to resolve their

individual retaliation claims ("Individual Settlement Amounts"). *Id.* § 3.5.

## II.    <u>Eligible Employees</u>

Class and FLSA Collective Members who are eligible to receive awards from the Fund

are divided into two overlapping groups:

a.    FLSA Collective: The "FLSA Collective" consists of all individuals who filed

proper consent-to-join forms with the Court pursuant to 29 U.S.C. § 216(b) prior

to May 9, 2018. *Id.* § 1.9.

b.    NYLL Class: The "NYLL Class" consists of all individuals who comprise the

NYLL class certified by the Court on September 16, 2014, i.e., "[a]ll persons

employed by Allstate as 'pending' No-Fault/PIP/Med-Pay adjusters whom

Allstate classified as exempt from the overtime requirements of the NYLL at any

time between April 13, 2005 and the date of final judgment in this matter."[5]

## III.    <u>Releases</u>

The Settlement Agreement provides that upon entry of the Final Approval Order, each

Collective Member will fully release all FLSA claims arising from their employment as a No-

---

[5]    Pursuant to the Parties' August 13, 2019 Stipulation and Proposed Order Amending the
Settlement Agreement, ECF No. 211, the NYLL Class also includes the following dispute
Adjusters who had opted in to the litigation: Diana Alvira, Susan Butz Banchetto, Nicholas
D'ermilio, Mary Janowitz, Michael Kaplan, Elizabeth Lauchner, and Ann Malhotra. *See* ECF
No. 211.

Fault/PIP/Med-Pay Adjuster at Allstate at any time through the date of the Preliminary Approval Order. *Id*. § 4.1. For Class Members who are also Collective Members, upon entry of the Final Approval Order, each Class Member who did not submit a timely and valid Opt-out statement, and was also a Collective Member as of May 9, 2018, will fully release all NYLL claims arising from the Class Member's employment as a No-Fault/PIP/Med-Pay Adjuster at any time through the date of the Preliminary Approval Order. *Id.* § 4.2. Additionally, those Class Members who are not also Collective Members will fully release all NYLL claims arising from their employment as a No-Fault/PIP/Med-Pay Adjuster at Allstate any time through the date of the Preliminary Approval Order upon entry of the Final Approval Order. *Id.* § 4.2(B)(1). In addition, all Class Members who endorse or present for payment the Settlement Check will fully release all FLSA claims arising from their employment as No-Fault/PIP/Med-Pay Adjusters at Allstate. *Id.* § 4.2(B)(2).

## IV.    **Allocation Formula**

Participating FLSA Collective and Class Members will be paid pursuant to an allocation formula based on the number of weeks worked during the relevant period. *Id.* § 3.6(A). To determine each Class Member's individual settlement allocation, the Claims Administrator will assign one point for each week worked as a Class Member between April 13, 2005 and the date of the Preliminary Approval Order. *Id.* To determine each Collective Member's individual settlement allocation, the Claims Administrator will assign one point for each week worked in a covered position from the date three years prior to the date on the Collective Member opted in and the date of the Preliminary Approval Motion. *Id*. § 3.6(B).[6] For those individuals who fall

---

[6]    The 13 individuals who opted in, but had no weeks in a covered position during this time, *see* pp. 5-6 *supra*, will receive one point. *See* ECF No. 207.

within both the Class and FLSA Collective, their share shall be calculated according to the Class Member settlement allocation.  *Id.* § 3.6(C).

Each person's points will be totaled and divided by the total points allocated to the Class and Collective as a whole to determine their proportionate share of the Net Settlement Fund.  *Id.* § 3.7.

## V.    Attorneys' Fees, Litigation Costs, and Expenses

Class Counsel will file a Motion for Attorneys' Fees and Reimbursement of Expenses prior to the fairness hearing.  *Id.* § 3.3.

## VI.    Service Awards

In addition to their payment under the allocation formula, Plaintiffs seek Service Awards of $20,000.00 each for Named Plaintiffs, $2,500 for Opt-in Collective Member Alexis Cherry, and $1,000 for each of the Deposed Opt-In Plaintiffs Kesha Clark, Nicholas D'Ermilio, Lisa Hlatky, Jeff Howard, Marcianne Lobello, Gloria Elaine Sanford, Shvonna Smith, Keisha Sneed and Clara Rodriguez, from the Class Settlement Amount.  *Id.* § 3.4

## VII.    Settlement Claims Administration

The Parties mutually agreed to select Rust Consulting ("Rust"), a class action claims administrator, to administer the settlement.  Swartz Decl. ¶ 45.  Rust's fees will be paid from the Fund.  Ex. A § 3.2(D).  On May 6, 2019, Rust mailed the Court-approved FLSA Collective and Class Member Notices using the names and addresses provided by Allstate.  Swartz Decl. ¶ 40. In light of the administration errors noted above, the parties have closely monitored Rust's work during this process.  *Id.* ¶ 45.

## ARGUMENT

I.    **The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.**

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). "Approval of a class action settlement is within the Court's discretion, 'which should be exercised in light of the general judicial policy favoring settlement.'" *Tiro v. Pub. House Invs., LLC*, No. 11 Civ. 7679, 2013 WL 4830949, at *4 (S.D.N.Y. Sept. 10, 2013) (citation and internal quotation marks omitted). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement[]" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (citation omitted); *accord Sukhnendan et al. v. Royal Health Care of Long Island d/b/a Royal Health Care,* No. 12 Civ. 4216, 2014 WL 3778173 (S.D.N.Y. 2014), at *4 (same) (citation omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.").

A.    **The Proposed Settlement Is Procedurally Fair.**

The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 474 (S.D.N.Y. 2013) (finding settlement to

be procedurally fair where it was reached after "arm's-length negotiations involv[ing] counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process"); *Sewell v. Bovis Lend Lease Inc.,* No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. 2012),  at *6 (settlement was procedurally fair where parties arrived at it after some discovery, a session with a mediator, and months-long settlement talks). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting Manual for Complex Litigation, § 30.42 (3d Ed. 1995)).  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610, 06 Civ. 304, 06 Civ. 347, 06 Civ. 1684, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).

Before initiating this action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses.  Swartz Decl. ¶ 14.  After filing the case, the Parties litigated for eight years, engaging in contested motion practice and extensive class-wide discovery, during which 11 Adjusters and seven corporate fact and Rule 30(b)(6) witnesses were deposed.  *Id.*  ¶¶ 15-20.  Litigation continued through substantial summary judgment briefing before the parties finally reached a settlement.  *Id.* ¶ 22.

On May 9, 2019, the Parties attended a full-day mediation and reached an agreement on key terms of the settlement with the assistance of experience mediator, Carol A. Wittenberg.  *Id.*

¶ 27.  At all times during the settlement process, the Parties negotiated on an arm's-length basis. *Id*. ¶ 33.

This long and contentious litigation history should eliminate any concern about a collusive settlement.  This case was an adversarial proceeding throughout its life cycle, and the parties were only able to reach an arms-length, negotiated settlement after years of litigation on the merits.

### B.    The Proposed Settlement Is Substantively Fair.

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement.  495 F.2d at 463.  The *Grinnell* factors guide district courts in making this determination.  They are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Id*.  All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

### 1.    Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and ensure recovery for the class.  "Most class actions are inherently complex, and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This

case is no exception, with approximately 299 Class and Collective Members and claims under federal and state law.  Swartz Decl. ¶ 48.

Further litigation would cause additional expense and delay.  Summary judgment motions, which the parties had begun prior to mediation, would have required substantial investment of time and expense, with fact-intensive briefing on both sides.  Such motions are inherently risky.  Moreover, as Judge Donnelly suggested, during the February 15, 2018 conference, disputed issues of fact would likely have meant that the case would still proceed to trial after summary judgment.  Class action trials are extremely time-consuming and expensive.  During a comparable overtime misclassification trial in 2017, *Strauch v. Computer Sciences Corp.*, No. 14 Civ. 956 (D. Conn.), Plaintiffs' counsel in this case spent approximately 2,777 hours and accrued $1,551,615 in lodestar during the trial phase of the litigation alone.  Swartz Decl. ¶ 52.  Like that trial, this case would have been proven through extensive testimony by Allstate managers and executives and Class and Collective Members, and unlike *Strauch*, where the parties stipulated to a method of calculating damages, could have also required expert testimony.  *Id*.  And as in the *Strauch* case, post-trial motions to decertify the class and collective would be likely, as would litigation over damages and attorneys' fees.  *Id*.  Even a judgment in Plaintiffs' favor would likely have been appealed (as it was in *Strauch*)[7], further extending the litigation.  *Id*.  This process would have delayed any recovery by the class far longer than the eight years that this case has already been pending.  This settlement, on the other hand, provides significant relief to Class and Collective Members in the near future.  Therefore, the first *Grinnell* factor weighs in favor of final approval.  *See Sukhnandan*, 2014 WL 3778173, at *5

---

[7]    *Strauch* was decided by a jury in December 2017, and is still on appeal before the Second Circuit over two years later.  Appellate briefing is currently underway.  Swartz Decl. ¶ 52.

(finding that the first *Grinnell* factor supported approval because "[l]itigation through trial would be complex, expensive and long").

**2.**     **The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). Here, the Notices sent to Class Members included an explanation of the allocation formula and an estimate of each Class Member's award. Swartz Decl ¶ 40. The Notice also informed Rule 23 Class Members of their right to object to or exclude themselves from the settlement and explained how to do so. *Id.* No Class Members have objected to the settlement or asked to exclude themselves. *Id.* This favorable response demonstrates that the class approves of the settlement, which further supports final approval. *See Sierra v. Spring Scaffolding LLC*, No. 12 Civ. 05160, 2015 WL 10912856, at *5 (E.D.N.Y. Sept. 30, 2015) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.") (citation omitted); *see also Beckman*, 293 F.R.D. at 476 (approving settlement where eight of the 1,735 Rule 23 class members opted out of the settlement); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 177 (W.D.N.Y. 2011) (granting final approval and noting "very little negative reaction by class members to the proposed settlement" where 11 out of 3,800 class members opted out, and 3 objected); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven of 2,025 class members objected and two requested exclusion); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at * 3 (S.D.N.Y. Aug. 6, 2010) (granting final approval where there were no objections but 28 of 5,262 opted out, noting that "[a] small number of objections is convincing evidence of strong support by class members"); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement

15

where 13 out of 3,500 class members objected and 3 opted out, noting that "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

The Class's reaction to the settlement has been overwhelmingly positive. Since Notice went out to FLSA Collective and Class Members, Class Counsel has received 153 phone calls and emails from FLSA Collective and Class Members who reacted positively to the settlement and are anxious to see it approved. Swartz Decl. ¶ 45. This favorable response demonstrates that the class approves of the settlement, which further supports final approval.

### 3.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

Although litigating this case through trial would require hundreds of hours of work for both sides, the Parties have completed discovery and spent enough time litigating the merits of this case to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but show] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (omission and second alteration in original) (internal quotation marks omitted).

The parties' discovery here easily meets this standard. Class Counsel conducted a thorough and extensive investigation into the merits of the potential claims and defenses.[8] Swartz Decl. ¶¶ 14-20. By the time of settlement, the parties had completed discovery, were preparing for summary judgment, and were anticipating a lengthy and expensive trial. By that time, the parties had conducted 18 depositions and hundreds of thousands of pages of documents

---

[8]      Class Counsel was assisted in this process by the Named Plaintiffs. Swartz Decl. ¶ 56.

had been produced over the course of the litigation. *Id.* ¶ 20. After eight years of adversarial motion practice, the parties had a thorough appreciation of the claims and defenses, which easily satisfies the third *Grinnell* factor. *Cf. Beckman*, 293 F.R.D. at 475 (granting final approval of settlement after "an efficient, informal exchange of information" that allowed plaintiffs to "obtain[] sufficient discovery to weigh the strengths and weakness of their claims and to accurately estimate the damages"); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005), at 185 (approving settlement of case "in the relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *Surdu v. Madison Glob., LLC*, No. 15 Civ. 6567, 2018 WL 1474379, at *5 (S.D.N.Y. Mar. 23, 2018) (granting final approval where the parties exchanged significant discovery regarding work schedules, employment policies, and paystubs).

### 4.    **Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).**

Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the court must "weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

A trial on the merits would involve significant risks for Plaintiffs on both liability and damages. In addition to the central question of whether Adjusters were misclassified as exempt, the remaining questions for trial included whether the Adjusters could obtain a third year of damages under the FLSA (by proving that Allstate willingly violated the law) and liquidated damages under the FLSA and NYLL (by undermining Allstate's good faith defense), how many hours Class Members worked, and how many weeks per year Class Members typically worked those hours. These fact-intensive questions would depend on favorable findings on mixed questions of law and fact that would have required an extensive presentation to the jury or Court. Other issues in dispute include whether the "fluctuating workweek" method of calculating damages can apply here, which is not a settled question within this Circuit. *See Strauch v. Computer Scis. Corp.*, No. 14 Civ. 956, 2018 WL 5870337, at *2 (D. Conn. Nov. 9, 2018).[9]

Class Counsel in this case are experienced and realistic, and understand that the resolution of liability issues, the outcome of trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of final approval.

### 5.    Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).

The risk of maintaining Rule 23 certification through trial is also present. Allstate has already attempted to decertify the Class and would likely attempt to do so again at a later stage of the proceedings. *See Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 569-70, 588 (E.D. La. 2008) (employer successfully moved to decertify class post-trial after losing a pre-trial motion to decertify the FLSA collective). Responsive briefing in opposition to such a motion

---

[9]    The *Strauch* court's determination of this issue in favor of the plaintiffs is currently one of the issues before the Second Circuit in the *Strauch* appeal. Swartz Decl. ¶ 52.

would impose additional delay and expense.  Settlement eliminates this risk, expense, and delay.

This factor favors final approval.

### 6.    Defendant's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).

It is likely that Allstate, a well-established corporation, could withstand a greater

judgment.  However, its ability to do so, "standing alone, does not suggest that the settlement is

unfair. . ."  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9).

Although there is no reason to think Allstate is unable to pay a larger judgment, the settlement

requires Allstate to pay the full settlement amount within 30 days of the issuance of the Court's

final approval order.  Ex. A ¶ 3.2(C).  Therefore, this factor is neutral and does not preclude the

Court from granting final approval.

### 7.    The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

Allstate has agreed to settle this case for up to $3,850,000.00.  The settlement amount

represents substantial value given the attendant risks of litigation, even though recovery could be

greater if Plaintiffs attained class certification, overcame motions to decertify any class or

collective, succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the

use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186

(quoting *In re Austrian*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness

with respect to a settlement – a range which recognizes the uncertainties of law and fact in any

particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  "[T]here is no

reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even

a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.

"It is well-settled law that a cash settlement amounting to only a fraction of the potential

recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil

Serv. Comm'n of City and Cnty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v.

Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990)

(approving $2.3 million class settlement over objections that the "best possible recovery would

be approximately $121 million").

Here, the $3,850,000 class wide settlement is reasonable, because it is a substantial

compromise of hotly disputed matters, providing significant benefits to Class and Collective

Members.  By Class Counsel's estimation, using conservative estimates of hours worked and

assuming that Plaintiffs prevailed on the core misclassification issue as well as willfulness and

good faith, the estimated value of the claims for the unpaid overtime being settled here would

range from approximately $7.7 million (assuming a half-time fluctuating work week ("FWW")

damage analysis) to $26 million (assuming a full time and a half analysis).  *See* Swartz Decl. ¶

50.  If Plaintiffs were unable to disprove Allstate's good faith defense, prevailingly solely as to

liability, the maximum recovery would range from approximately $4.4 million (using a FWW

analysis) to $14.8 million (using a time and a half analysis).  *Id*. ¶ 51. The settlement therefore

represents between 14% and 87% of the projected recovery, if Plaintiffs prevailed (again,

applying conservative underlying assumptions about the provability of hours worked, which is

itself a disputed issue of fact that poses additional risks to both parties).  The settlement therefore

represents a substantial recovery for Class Members in light of the risks of litigation.  Weighing

the benefits of the settlement against that risk, the settlement amount is reasonable.

## II.    **Approval of the FLSA Settlement Is Appropriate Under Federal Law.**

Plaintiffs also request that the Court approve the settlement of their FLSA claims.  They have brought their FLSA claims as a collective action.  The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement.  *See Massiah v. MetroPlus Health Plan*, Inc., No. 11 Civ. 05669, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84 (S.D.N.Y. 2001).  Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions.  *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *Reyes v. Altamarea Group, LLC*, No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. 2011), at *6 (internal quotation marks omitted).  Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes.  *Sierra*, 2015 WL 10912856, at *6; *see also See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Reyes*, 2011 WL 4599822, at *6.  If the proposed settlement reflects a reasonable compromise of contested issues, the court should approve the settlement.  *Lynn's Food Stores*, 679 F.2d at 1354; *Reyes*, 2011 WL 4599822, at *6.  In this case, the settlement was the result of arm's-length negotiation following eight years of contested litigation.  Swartz Decl. ¶ 33.  During the entire process, Plaintiffs and Defendants were represented by counsel experienced in wage and hour law.  Because the Settlement Agreement resolves a clear and actual dispute and was reached after vigorous arm's-length settlement negotiations, it should be approved.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant final

approval of the NYLL and FLSA settlement.

Dated: March 24, 2020
New York, New York

Respectfully submitted,

/s/ Justin M. Swartz
Justin M. Swartz

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Michael J. Scimone
685 Third Avenue, 25th Floor
New York, New York 10016
Telephone: (212) 245-1000

*Class Counsel*